Hogan's heirs vs. Welcker and Middlebaugh.

| 14 | 177 |
| 148 | 560 |
| 148 | 571 |
| 150 | 667 |

HOGAN'S HEIRS vs. WELCKER & MIDDLEBAUGH.

1. If land be purchased with money in the hands of an administrator, and for the express purpose of being subjected to the payment of the debts of his intestate, there is nothing in the policy of the law prohibiting the administrator from conveying it.

2. The word "heirs" was necessary to convey a fee simple by deed, previous to our statute rendering this word unnecessary.

3. The intent of a deed, however manifest, cannot prevail against a final rule of law.

ERROR to St. Louis Circuit Court.

STATEMENT OF THE CASE.

This was on action of ejectment for a tract of 30 arpents of land lying in St. Louis county, in what is called the Grand Prairie Common Fields.

---

Hogan's heirs vs. Welcker & Middlebaugh.

---

The plaintiff's, after showing their representative character, proved that one Angus L. Langham had become seized, by virtue of mesne conveyances from the original confirmees, of the lots of which the tract in controversy is a portion, one of said lots being two and one half arpents in front by forty arpents deep, and the other being two arpents in front by forty deep.

The plaintiff's then showed that the lot of two and a half arpents in front by forty deep had been divided into two equal parts by a line parallel to the front, and that Langham had conveyed the western half in fee to William Rector. Also, that the tract or lot of two by forty arpents was in like manner divided by a line parallel to the front, and the west half conveyed to William Rector by A. L. Langham; the granting words of said deed being "have sold, transferred and set over to the said William Rector, all my right, title, interest and estate in and to the one equal half of a certain tract or parcel of land this day conveyed to me by Auguste Braljean and Milanic his wife, and Louis Braljean, situate, lying and being in the place commonly called the big prairie and about three miles west of the aforesaid town of St. Louis, and containing the quantity of eighty arpents French superficial measure, and bounded northwardly by land owned by the said Langham; on the south by land formerly granted to Pane Kiercorean, and east and west by land of parties unknown, the part of the aforesaid tract by these presents sold and transferred to the said William Rector, is to be one equal half of said eighty arpents, to be surveyed and laid off on the west side of said tract and will be two arpents fronting eastwardly by twenty arpents in depth running westwardly." The plaintiff's then proved that said William Rector took possession of the tracts to him conveyed by A. L. Langham, being in all four arpents and one half in front by twenty in depth, at the time the same were conveyed to him by Langham, which was in the year 1818, and continued in possession up to his death which occurred in June 1825.

The plaintiff's then showed that an execution issued from the Supreme Court of the State of Missouri in May 1824, in favor of Lewis Marlo against William Rector, and that by virtue thereof the sheriff of St. Louis county levied upon and sold thirty arpents of the above described tract of land, the part sold being the extreme west thereof, to F. R. Conway, that Conway afterwards, on the 26th of October 1826, reciting a previous agreement with William Rector to that effect, made a conveyance of this tract to Arthur L. Magenis and his heirs, "to have and to hold the same in trust for the use of the legal representatives of said William Rector, as if the same were vested in the said William Rector at the time of his decease and to be distributable and applicable as other assets of said intestate."

The plaintiff's then showed that by an order of the county court of St. Louis county in 1837, the administrator of William Rector sold this tract of land to Matthew Hogan, by deed bearing date November 7th, 1837. No exception was taken to the regulating of the proceedings which resulted in this deed.

The plaintiff's then gave in evidence the decree of the St. Louis circuit court sitting as a court of equity, dated August 1840, passing to Matthew Hogan all the estate which by virtue of the deed from F. R. Conway, dated 1826, had passed to Arthur L. Magenis, and also all the title which had theretofore been vested in George Collier, Peter Powell and Jesse Lindell, in the premises in controversy; Collier, Powell and Lindell having been trustees in deeds which had been paid off and satisfied.

The plaintiffs then identified the land in said deeds and decree mentioned with that whereof said defendants were in possession; proved possession thereof by defendants at the time when the suit was commenced, and that the same was worth per annum two hundred dollars, or at that rate monthly, and closed their case.

The defendants proved that the southern arpent of the tract of three by forty arpents, originally granted to widow Hebert, had been conveyed to them by title paramount to that of plaintiffs, and that after the death of William Rector all the title and estate of Langham in and to the remaining arpent of the Hebert lot was sold at sheriff's sale under judgments to defendants. Also, that all the interest and estate which William Rector had in said tract of thirty arpents in 1825 was by sheriff's deed, dated December 29th, 1825, conveyed to R. Wash, under a judgment rendered

against William Rector in August 1825, and that the judgment and proceedings thereunder were regular. It was agreed mutually between the parties to this suit that each judicial sale referred to in the bill of exceptions in this cause was regular. Whereupon the defendant prayed for, and the court gave the following instructions, to the giving of which the plaintiffs excepted.

1st. That no title sufficient to support this action passed by the administrator's sale and deed of Peter A. Walsh, public administrator given in evidence in this cause.

2nd. That if the jury find from the evidence that a part of the tract of three by forty arpents of land confirmed to Widow Hebert was conveyed by said Widow Hebert in the year 1777 to Joseph Labuxiere, that he conveyed the same to Louis Chevalier and that the same is embraced in the deed of Widow Chevalier to John Mullanphy, and of John Mullanphy to Rector and Langham in the sheriff's deed to O'Fallon, then there can be no recovery in this action for such part of said confirmation to Widow Hebert.

3d. That the deed of A. L. Langham to William Rector, given in evidence in this case dated in August 1818, passed to Rector if any title, only an estate during the life of said Rector.

4th. That no title passed by the decree in chancery given in evidence in this case sufficient to sustain this action.

The plaintiffs asked, and the court refused the following instructions, viz:

That the sale and deed by the administrator of William Rector, and the decree in chancery given in evidence taken together, are sufficient in law to pass the legal estate to the land therein described to Matthew Hogan.

The plaintiffs excepted to this refusal and the verdict and judgment being against them, they moved for a new trial which being disallowed, they sued out a writ of error to this court.

## GANTT, for plaintiffs in error.

I. That the deed from Conway to Magenis in trust for the legal representatives of William Rector, the consideration of said deed being part of the assets of said William Rector's personal estate, and the deed being made in pursuance of a contract made with Rector in his life time passed the title to the real estate mentioned therein to Rector's heirs in the same manner as if said deed had been executed to William Rector in his life time, and made said real estate assets in the hands of his administrator.

II. The trust created by said deed was so created that the statute of Missouri in that behalf immediately transferred thereto the legal estate which was limited to Magenis, trustee.

III. If any legal estate was outstanding in Lindell, Collier, Pettis and Magenis, it was divested by the decree of the St. Louis circuit court sitting in chancery, and transferred to Hogan in 1840.

IV. By the deed from Rector's administrator to Hogan in 1837, all the interest in said real estate, wherewith the legal representatives (heirs) of Rector were clothed by virtue of the statute of descents, passed to and vested in Mathew Hogan, purchaser at the administrator's sale and grantee in said deed. Rev. Code, 1835, title Administration, article 3, § 6 to § 23 inclusive.

V. Langham on August 18th, 1818, purchased from Auguste S. Louis Braljean, 2 by 40 arpents in the Grand Prairie for $800. This deed is made to "Langham and his heirs." On the same day Langham, for $400, conveyed to Wm. Rector "all my right, title, interest, and estate in and to the one equal half of a certain tract of land, this day conveyed to me by Louis and Auguste Braljean," &c. It is submitted that by these words a fee passed to Rector. 4 Cruise's Digest, ch. 21, § 7; 1 Inst. 9 b. n. 6; Io. 10 a; Id. 273 b; 1 T. Coke, pages 494, 500, 501, (side paging) (387, top paging.)

VI. The intention of the party of the first part (Langham) to convey a fee to Rector by this deed, is plainly manifested. The only question is, can a court effectuate this intent unless the word "heirs" be inserted in the deed? The rule requiring the word "heirs" as essential to the creation of an estate in fee, is of feudal origin and dependent on feudal reasons

only. The reasons never had any application here, and the rule should have as little. 6 Cruise's Dig. ch. 19 and 10.

VII. In England courts have allowed estates in fee to be created by will without the use of the word "heirs," and the reason assigned is, that the object of courts of justice is to give effect to the intentions of a testator as far as may be. It is submitted that this rule is no less binding upon courts of justice when deeds are before them for interpretation. 6 Cruise's Dig. ch. 9 and 10.

VIII. The words "all my right, title, interest and estate," have been repeatedly held to pass a fee in a devise, even in England. Id. ibid Brown vs. Wood, 17 Mass. 68.

IX. In a conveyance under the statute of uses, the consideration if full and valuable, raises a use in fee.

X. Nothing passes to Wash by the sheriff's deed of 1825, under judgment of August, 1825, for at neither of these periods had Rector any interest in the land; all his interest having been previously sold to Conway under a senior judgment.

XI. A copartner, or one of two joint tenants in fee, may release to his cotenant, and by the words "all his right," without the word "heirs," a fee will pass. 1 Inst. 10 a; 4 Cru. 295, § 7.

The reason assigned is, that both being seized in fee, and the release being of "all the right" of the releasor, the terms employed have as strong a relation to the inheritance as if the word heirs had been used. In the case at bar, a person seized in severalty, and wishing to devise his real estate (whereof he gives not only a local description, but shows the title by means whereof he is seized,) conveys to another "all his right, title, interest and estate in and to the one equal half of a certain tract, &c." It is submitted that the words and the context "have as strong a relation to the inheritance as if the word heirs had been mentioned." Id. qu. Sup. "Verba relatio in esse videntur." Langham refers to the deeds by means of which he is seized. These deeds contain the word "heirs," and undoubtedly conveyed a fee to him; and he conveys to Rector "the one equal half of the tract," and all his right, title, interest and estate thereto. Here, if ever, the maxim quoted applies. 3 Bac. Abs. 534; 1 T. Coke, 500. If the effect of the deed from Conway to Magenis, as trustee, be not such as to put the estate in the position contemplated by Conway; that is, if notwithstanding this deed, the title was not in a condition to pass by the sale and deed of the administrator of Rector, according to sec. 23 of art. 3 of the administration act of 1835, then, for the purpose of effectuating the intention of the grantor and the deceased, the estate vested in Magenis will not be executed by the statute of uses, but will remain in Magenis to save the use to be acquired at the administrator's sale by the purchaser. 1 Cruise's Dig. 417, Tit. 12. So that whichever view of the matter be taken, whether the statute executes the trust vested in Magenis or not, the heirs of Hogan have the title which Conway had when he made the deed to Magenis. They have it by operation of the statute of Missouri, (§ 23 of art. 11 of the administration law of 1835,) if the deed from Conway to Magenis be effectual to bring the estate conveyed within the letter on the equity of our statute of administration. But if this cannot be, the intention of the grantor (Conway) will be defeated, unless Magenis remained seized of the legal estate, for the use of the creditors or other legal representatives of Rector; and therefore a trust will be created. (1 Cru. Dig. 417 and following.) But this legal estate was transferred from Magenis to Hogan by the decree of the St. Louis circuit court setting in chancery, Hogan having previously purchased the equity at the administration sale.

The defendant in error contends that both the legal and equitable estate to the land in controversy vested by Conway's deed in the heirs of Rector; and that the title acquired by Hogan at the administration sale, was at most only the equitable title; that is, that the effects of this judicial sale was to divide the legal from the equitable estate, transferring the last to the purchaser, and leaving the former in the heirs of Rector, a position which is unwarranted by reason, precedent, or convenience.

It is supposed that the injustice of the doctrine intimated by the defendant in error, that the land conveyed to Magenis for the purpose of causing it to constitute a part of Rector's es-

Hogan's heirs vs. Welcker & Middlebaugh.

tate, cannot be subjected to the demands of his creditors, is too gross to require that this doctrine should be otherwise refuted than by stating its nature.

SPALDING, for defendants in error. ·

I. The defendants in error maintain that the deed of Conway to Magenis of the land in question, dated 26th October, 1826, for the use of the legal representatives of Rector in the same way as if he had died intestate, vested the title in these representatives and not in Magenis ; in other words, that our statute acted upon it and converted the legal title to the use.

Rev. Code of 1825, p. 214, sec. 1. This is substantially the English statute of uses ; and that it operates to vest the legal title where that use is, in cases of mere naked trust or use, when there is nothing for the trustee to do, there is no doubt. Even the counsel for the appellees agree to this. 1 Law Libr. (Con. on uses, 21 and 27,) 22 Law Lib. (Lewin on Trusts, 102.) Both of these references are to elementary works, which treat of the effect of the statute of uses so called.

That the description of the person to whose use the deed is made, is sufficient. See 3 Bac. Abr. 378, that a grant to a person by description Bishop of A., is good. 2 Brack. 156. Conveyance to P. H. and son, a mercantile firm, is sufficient description of the son to entitle him to take under the deed. Shep. Touch, 235, (side paging) that grantee in a deed may be named or described without naming.

II. The administration sale and deed conveyed no such title as will support ejectment, nor impart any title. By the very words of the law, which alone gives the proceeding and deed any validity, and also by the words of the deed itself, only the right and estate which Rector had at the time of his death could pass.

Rev. Code of 1835, page 53, sec. 23· The administrator's deed is required to pass, and so reads "all the right, title and interest which the intestate had at the time of his death, and is declared by the act to be effectual to pass only such right and interest.

1st. At the time of the sheriff's deed to Conway, Rector had no interest in said land, nor afterwards till his death. Conway's recital in his deed to Magenis, of the fact of an agreement with Rector that he might cancel his note for the money borrowed, and give back the land, is no proof of that fact as against Wash, who claims by a prior right. 2nd. And if it were proof of it, does that agreement give Rector any right or estate in law or equity ? Until Conway exercised his right of action, the whole matter stood in contract; and there is no proof that he ruled his election till after Rector's death, but on the contrary his own recital shows that his election was made after there was an administrator of Rector, and of course after Rector's death ; so that at the time of his death, he had no interest in the land legal or equitable.

The act prescribes the form of the deed, and requires it, in sec. 22, to convey to the purchaser "all the right, title and interest which the deceased had in the same." Under those words it is contended by appellants, that a title passes which never was in Rector at the time of his death ; that is, that by the words "all the title which Rector had at the time of his death," passes not his title, but all the title which his heirs acquired, not by descent, a year after his death ! but by conveyance to them from a third person, for a consideration passing from the administrator. If the administrator buys land or has it conveyed to the heir, how can it pass by administrator's deed ?

III. The decree in chancery passed no title to Hogan. This decree was against Collier & Lindell and Magenis. There is not a particle of testimony that Collier & Lindell ever had any title. The recitals of the decree are not evidence of conveyances of Conway to Lindell & Collier. Those conveyances should have been shown, if any.

As to Magenis, there was no title in him, inasmuch as the deed to him for the use of Rector's legal representatives passed the title into those representatives.

recitals in the decree, even if evidence of conveyances, yet state that they were deeds

of trust which had been satisfied; and these deeds, if produced, would have shown on their face, as they generally do, that on payment or satisfaction of the debts, they are void, that is, that the title revests.

IV. The deed of Langham to Rector of the 2 arpents by 20, dated 10th Aug. 1818, conveyed only a life estate.

1 Miss. Rep. 759, Mullanphy vs. Peterson; 1 T. Coke, p. 575, 576, and in note P; also 564, 572; 2 Black. Com. 107, 108, 121; Ship. Fanch. 86, side page. "A deed to a man and his assignees forever," passes only a life estate at the most; for without the words "heirs," it will be but a life estate, although it is otherwise in a will. Com. Dig. Estates A. 2; 4 Cruise, chap. 21, sec. 1 and 2; Rev. Code, 1845, p. 219, sec. 2, the word "heirs" not necessary to create fee simple, Why this, unless it were before necessary? 1 Blackf. 137, Clearwater vs. Rose. A deed to a man and "his executors, administrators and assigns," not containing the word "heirs," conveys only a life estate.

3 Wash. C. C. 498. Deed to a man and "his generation" carries only a life estate. 13 Pick. 24.

The present case does not come within any of the exceptions mentioned by Coke or other authorities, and the court is required by appellants to rescind the rules of common law, and apply those which govern devises.


NAPTON, J., delivered the opinion of the court.


One of the questions discussed in this case involves the merits of the entire title, and I will consider it first.

It is contended that Conway's deed to Magenis created a naked trust in Magenis, which our statute immediately executed in the heirs of Rector; that the sale and conveyance by Rector's administrator, therefore, conveyed nothing, or at all events, did not convey the legal title, which is yet outstanding in Rector's heirs.

Upon the hasty examination which I have been compelled to give to the cases upon the statute of uses, I shall not venture to question the propriety of the construction conceded in this case on both sides, which deprives Magenis instanter of the legal title. It is not material in the view hereafter to be taken. It may be admitted, that the use was executed and the title passed from Magenis; for if it did not, by the force of Conway's deed, it was certainly transferred by the proceedings in chancery, instituted by the plaintiff. But the question remains, to whom did this title pass? Who are Rector's legal representatives *quoad* this land?

If we look outside of the deed, we find that this land was bought with the money of Rector's estate, and that it was designed to be assets for the payment of debts. The same thing appears upon the face of the deed. The conveyance is to "A. L. Magenis and his heirs, to hold the same in trust for the use of the legal representatives of said William Rector, as if the same were vested in said William Rector at the time

of his decease, and to be distributable and applicable as other assets of said intestate."

The phrase "legal representatives," has different meanings, according to its context. When used in reference to lands, it usually applies to the "heirs;" but when used in reference to personalty, it means the administrator or other personal representatives. As to this particular piece of land, conveyed by Conway, purchased with the money in the hands of the administrator, and for the express purpose of being subjected to the payment of his debts, the legal representatives of W. Rector were not his heirs, but his administrator. To construe the words here to mean "heirs," would totally defeat the manifest intent of the deed. If the land was conveyed to the heirs, the administrator could have no control over it, and it would not be distributable and applicable as other assets of said intestate." If a deed admit of two constructions, one of which will support and the other defeat its intent, the construction which will uphold the deed must be adopted, unless some inflexible rule of law interfere. Now if we construe the words "legal representatives" to mean heirs, we defeat the intent manifested on the face of the deed. Indeed, the subsequent clauses immediately following the use of this phrase may be regarded as an interpretation or qualification of the words themselves. The conveyance is to the "legal representatives" of Rector, to be distributable and applicable as the assets of the intestate.

The land conveyed would not be distributable as assets, if the heirs got the title. A court of equity might intercede and accomplish this purpose, but the intent of the deed was to do this without the aid of a court. It may be considered as though it read "to A. L. Magenis and his heirs, in trust for the administrator of Rector, in trust for his creditors and heirs."

Can it be doubted that the "heirs" of Rector were not the only cestuys que trust? What means the deed, when it says that the land was to be as other assets of the estate? If assets of the estate, it was of course for the benefit of the creditors as well as the heirs. If the statute executes the first use, it certainly does not execute the last.

It would seem to be very clear, that upon any construction of this deed of Conway's, Hogan's heirs are the equitable owners of his title, whatever it was worth. If the title in such cases vests in the heirs, there must be a resulting trust to the administrator. If the latter converts money into land, and lets the title pass to the heirs, whether the act has been in accordance with his powers or not, a court of equity would not permit the heirs to hold the land, and the creditors to lose the money.

Our statute concerning administration authorizes an administrator in some cases to convert money into land, but the act does not seem to have contemplated a case where a purchase of land would be made with a view to a subsequent sale, or where such sale might by subsequent events, become necessary to pay debts. Hence, no provision is made, even in the case of mortgaged land, for an administrators' conveying a title acquired subsequently to the death of the intestate. But in such cases, if the title happens to fall upon the heirs, or is made to the heirs, there [must be a resulting trust to the administrator for the benefit of creditors, which a court of equity would enforce.

The deed of the public administrator, in this case, who was administrator of Rector, conveys "all the right, title, interest and demand of the said William Rector, which he had at the time of his decease, and all the right, title, interest and estate which vested in me, as public administrator, &c., legal representative of the said William Rector, dec'd, by virtue of the said deed from F. R. Conway to A. L. Magenis, &c."

If the deed of Conway invested Rector's administrator with the legal title, then this deed of the administrator passed it to Hogan. There is nothing in the statute to prevent an administrator from passing a legal title, where he has acquired one in this way.

The deed, it may be admitted derives no validity or force from the statute, and so far as it attempts to convey Rector's title, it may be a nullity—because Rector had none at the time of his death. But the statute does not prohibit an administrator from taking a legal title in trust for the purposes of his administration, nor from afterwards conveying it. There is nothing in the act on the subject. It expressly declares the effect of the administrator's sale and deed, in cases provided for—but the one now under consideration is not one of those cases. There is nothing in the policy of the law to prohibit or discountenance the deed made to Hogan. It was exactly what a court of equity would have required to be done, if the title of Conway had been conveyed to the heirs.

The second point relates to the title of that portion of the 30 arpents, which was within the Heber lot or of the half of it. The conveyance did not use the word "heirs," and it was made previous to our statute, which has rendered this word unnecessary to convey a fee simple. The intent of a deed, however manifest, cannot prevail against a fixed rule of law.

That the word "heirs" was necessary to convey a fee simple by deed, is clearly shown by the authorities cited.

The reason of the rule is to be found in feudal customs, and has long since ceased—but until the legislature altered it, as they have done, it was not in the power of the courts. There were exceptions to this rule, as the authorities cited show, but the present is not one of them. The courts cannot be held responsible for any inconvenience or injustice which the enforcement of this ancient rule may produce. It is their duty to take the law as they find it.

In relation to the 40 arpent lot, mortgaged to Mullanphy, and subsequently acquired by O'Fallon, there seems to be no dispute.

Judgment reversed and cause remanded.