SUPREME COURT. Erie General Term, February, 1862. *Davis,* *Grover* and *Hoyt,* Justices.

JAMES S. KUCKLER, plaintiff in error, *v.* THE PEOPLE, defendants in error.

The provisions of the act of April 14, 1860, entitled "An act in relation to capital punishment, and to provide for the more certain punishment of the crime of murder," so far as they apply to offenses committed before the act took effect, are *ex post facto,* and, therefore, unconstitutional and void.

Where a conviction had taken place under that act, for an offense committed before the act took effect, and sentence had been pronounced by the Court of Oyer and Terminer, in pursuance of the provisions of the act, no bill of exceptions having been returned with the record, and the only error committed having been in the giving of judgment, it was held, on reversing the judgment, that this court had no power to order a new trial, but that the prisoner must be discharged.

To grant a new trial, in such a case, would be a violation of the constitutional provision which protects the prisoner from "being twice put in jeopardy for the same offense," and on the second trial the plea of *autrefois convict* would be a good defense.

THIS case came up on a writ of error to the Court of Oyer and Terminer of the county of Erie. No bill of exceptions was returned with the record. The questions arising in the case are sufficiently stated in the opinion of the court.

*E. Cook,* for the plaintiff in error.

*F. J. Fithian* (District Attorney), for the defendants in error.

*By the Court,* DAVIS, J. Before the passage of the act of April 14th, 1860, entitled "An act in relation to capital punishment, and to provide for the more certain punishment of the crime of murder," James S. Kuckler, the plaintiff in error, committed murder by poisoning his wife. He was indicted, and after that act went into effect was tried and convicted, and sentenced to be imprisoned and executed, pursuant to its provisions. It is now established by the Court of Appeals, in *Hartung* v. *The People* (22 *N. Y.,* 95), that the provisions of the act under which judgment was pronounced on the plaintiff in error, in so far as they apply to offenses

committed before that law became operative, are *ex post facto*, and therefore unconstitutional and void. This determines, without further discussion, that the judgment in this case is erroneous, and must be reversed.

The important question then arises, what disposition should be made of the case upon the reversal of the judgment?

The trial of the prisoner and his .conviction were in all respects regular and legal, and no exceptions to them are brought before us. The writ of error has brought up the record alone, and no question is made except upon the illegality of the judgment pronounced upon a proper conviction. Untrammeled by statutes or decisions, there would seem to be no difficulty in holding that the true course in such a case would be, on reversing the erroneous judgment, to direct the court below to pronounce the proper judgment on the conviction. So far as we have decisions on this question, they are based on the English cases, without pausing to inquire whether those cases are applicable to our system or not. In *Quimbo Appo's Case* (19 *N. Y.*, 531), it is settled that the Oyer and Terminer of the several counties of this State "is a permanent and continuous court, and its successive sessions are terms of the same and not of distinct tribunals," and the difference between it and the English Courts of Oyer and Terminer, which are held by virtue of special commissions from the Crown, which expire with each session, is very clearly shown. When, under the English system, a judgment was reversed on writ of error, because the Oyer and Terminer had given an illegal judgment upon a regular conviction, there remained no court below which could be directed to pronounce the proper judgment. It is not so with us, and, therefore, the reason for the rule failing, the rule itself is not applicable, and never ought to have been brought into our practice.

But while the decisions would not have restrained us from directing the Oyer and Terminer to proceed to give the proper judgment in this case, the provisions of the statute, regulating the practice on writs of error in such cases, must be respected. The statute provides (2 *R. S.*, 741, § 24) that, "if the Supreme

Court shall reverse the judgment rendered, *it shall either direct a new trial,* or *that the defendant be absolutely discharged,* according to the circumstances of the case.

One of the alternatives of this statute—*either to direct a new trial, or to discharge the defendant absolutely*—must be pursued, and this necessarily precludes us from directing the court below to proceed to the proper sentence; and relieves us also from inquiring whether there was any sentence that could have been lawfully pronounced, left by the blind and sweeping changes of the act of 1860. The question for our examination is therefore narrowed to this: Can we direct a new trial, or must the prisoner be absolutely discharged? It is insisted by the counsel for the plaintiff in error, that it is authoritatively settled in this State, that where the writ of error brings up the record alone, without a bill of exceptions, and the judgment is reversed for error manifest in the record, this court cannot order a new trial, but must discharge the prisoner absolutely. Before bills of exceptions were extended by statute to criminal cases, the court had no power to grant new trials in cases of felony and treason, where the proceedings appeared by the record to have been regular. Neither the merits nor the proceedings in the progress of the trial were reviewable on writ of error. (*People* v. *Comstock,* 8 *Wend. R.,* 549; 3 *Black. Com.,* 388; 13 *East R.,* 416; *Chit. Crim. Law,* 532.) This rule of the common law has been followed since our statute, and it has been said that new trials can be granted now only where the judgment is reversed upon bill of exceptions. (*People* v. *Taylor,* 3 *Denio R.,* 91; *O'Leary* v. *People,* 4 *Park. Cr. R.,* 193.) In the *People* v. *Taylor,* the point was not at all involved, and the very eminent judge who pronounced the opinion, was evidently only stating the common law rule, without respect to any statute. He neither referred to the statute, nor in any wise considered its effect upon the former rule, and ought not to be regarded as holding, in his merely incidental *dictum,* that the statute had not changed the common law. In *O'Leary* v. *The People,* the court, so far as this point was considered, followed the *People* v. *Taylor,* without

Kuckler *v.* The People.

considering the question in the light of the statute. In *Hartung's Case*, the Court of Appeals (as the reporter informs us in notes), on reversing the judgment, ordered a new trial, "not being able judicially to see that, upon a new trial, the prisoner might not be convicted of manslaughter in some inferior degree." A bill of exceptions was, in that case, annexed to the record, but no error was found in the bill, and the judgment was reversed solely because of the effect of the law of 1860 on the case. It would be impeaching the good sense of that court to say that, in a case where no error appeared in the bill of exceptions, it held it to be proper to grant a new trial for error found only in the record, simply because a bill was attached to the record. It must have been considered that the statute had given the court power to order a new trial "according to the circumstances of the case," and in that respect had changed the common law rule, or, which is possible, the order was entered without considering this point at all. In either view, the case is perhaps not to be considered as an authority on this question.

The statute in plain terms embraces *all criminal cases* brought before the court by writ of error, whether the alleged error is in the judgment record or in a bill of exceptions annexed to it, and, in my opinion, the true test to determine what order shall be made on a reversal, is whether a new trial can be legally effective or not. It is sometimes apparent on the record that no conviction can lawfully be obtained, as where the indictment is fatally defective, or where the circumstances are such that the prisoner cannot be retried without a violation of his constitutional or legal rights; and in all such cases it is the duty of the court to discharge the prisoner absolutely; but where the error, though apparent in the record only, is of a character that renders *the trial and conviction* illegal, so that the prisoner cannot legally be said to have been in jeopardy, the statute, in my judgment, authorizes this court to order a new trial.

But in the case at bar the conclusion is forced upon my mind that there can be no new trial. The trial and conviction

that have taken place were in all respects regular and legal. When the verdict was rendered the prisoner stood lawfully convicted of murder. (4 *Black. Com.*, 362.) The legislature (to that purpose omnipotent, both in wisdom and folly) had repealed all statutes prescribing his sentence and punishment, under circumstances where the common law was not revived. *Hartung .v. People,* 22 *N. Y. R.*) The sentence attempted to be substituted was unconstitutional; and we are compelled, by reverence for the Constitution, as well as for the adjudication of the Court of Appeals, to reverse it. But the legal conviction upon a regular trial remains *a fact,* of which the prisoner is entitled to avail himself.

His plea of *autrefois convict* would be a bar to a new trial, and would, as it seems to me, be established by producing the record now brought before us. "The plea of *autrefois convict* or a former conviction for the same identical crime, though no judgment was ever given or perhaps will be (being suspended by the benefit of clergy or other causes), is a good plea in bar to an indictment." (4 *Black. Com.*, 336.) In *The State* v. *Benham* (7 *Conn. R.*, 414), it was held that the verdict itself constitutes the bar; and in *The State* v. *Morrell* (2 *Yerg. R.*, 24), that this is so even when the judgment is improperly arrested upon a good indictment. (2 *Cow. & Hill's Notes*, 955.)

The prisoner could not be deprived of the benefit of that plea by the answer that the judgment pronounced on the conviction was illegal. It was no fault of his that the legislature had deprived him of his well earned deserts — to be hanged; nor that the court, obedient to the letter of the act, pronounced the sentence it prescribed.

It is a familiar maxim of the common law, "*Nemo debet bis vexari pro eadem causa.*" This maxim is embodied in the Constitutions of this State and of the United States. The former declares that no person shall be subject twice to be put in jeopardy for the same offense (*sec.* 6, *art.* 1, *Const. of N. Y.*); the latter, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." (*Art.* 5, *amend. Const. U. S.*) It needs neither argument nor authority

to show that these provisions are applicable to a case where, upon a regular trial, there has been a lawful conviction of a felony. They protect the prisoner from another trial; and the result, under the statute, is his absolute discharge.

To discharge the prisoner, so justly convicted of his appalling crime, is a most painful duty; but in our view, the law leaves us no alternative. If the result in his case, and in the parallel one of Mrs. Hartung — in one of which a faithful wife, in the other a confiding husband, was deliberately poisoned to death, to give scope to the embraces of a paramour and prostitute — shall prove beacons to warn against future imitations of the folly and stupidity of the act of 1860, they will not be wholly without benefit to the community.

