THE STATE *ex rel.* HOUSTON v. WILLIS, *Warden of the Penitentiary.*

1. **Larceny**: STATUTES CONSTRUED. By section 25, chapter 201, General Statutes of 1865, the stealing of property of the value of ten dollars or more, constituted grand larceny; and by section 27 the stealing of property under the value of ten dollars, constituted petit larceny. By the act of March 1st, 1877, (Sess. Acts 1877, p. 241,) these sections were amended by raising the value necessary to constitute grand larceny to twenty dollars, and by making the stealing of less than twenty dollars petit larceny. A person indicted for stealing property of the value of ten dollars before the passage of the act of 1877, pleaded guilty after the act took effect, and was sentenced to two years imprisonment in the penitentiary, the penalty prescribed for grand larceny. An act in force at the time the offense was committed, (Wag. Stat., 895, § 6) provided that "no offense committed, and no penalty    *    *    incurred previous to the time when any statutory provision shall be repealed, shall be affected by such repeal ; but the trial and punishment of all such offenses and the recovery of such penalties    *    *    shall be had in all respects as if the provision had remained in force."

   *Held,* 1st, That section 6 applies as well to cases where a statute has been amended as where it has been absolutely repealed;

   2nd, That the act of 1877 is, by its terms, prospective, and does not apply to offenses previously committed;

   3rd, That the sentence as for grand larceny was therefore proper.

PER SHERWOOD, C. J.

2. **Ex post facto laws.** The Legislature has no power to change the punishment of an offense by a statute passed after it is committed. Such legislation is *ex post facto;* and, except where such change

State ex rel. Houston v. Willis.

consists in the remission of some separable portion of the punishment, a statute making it must be held constitutionally inapplicable to antecedent transactions. The court cannot inquire whether it should not be applied in every case where it may be supposed to mitigate the punishment; for there is no test by which to determine whether it has that effect.

### Petition for Habeas Corpus.

The petitioner, Houston, was indicted for stealing personal property of the value of ten dollars. He pleaded guilty, and was sentenced to two years imprisonment in the penitentiary. The other facts appear in the opinion of the court.

### Louis Houck and Henry Flanagan for relator.

1. The change in the law defining petit larceny enured to Houston's benefit. Section 6, p. 895, Wag. Stat., does not apply, because the act of 1877 does not repeal, but only amends the sections of the General Statutes defining larceny.

2. It was competent for the Legislature notwithstanding the General Statute, to modify the punishment of crime, and if an act reduces the punishment, or prescribes a penalty less severe, leaving the act in force which defines the crime, it cannot be said that Sec. 6 above quoted, saves the act amended, and that the offense must be punished according to the provisions of the latter. The act is in mitigation of punishment, and is not a repeal of an existing law. We submit, therefore, that the old punishment as to offenses committed before the passage of the act of 1877 is not revived. Cooley on Con. Lim., 267 et seq.

### J. L. Smith, Attorney-General, for respondent, cited

Wag. Stat., p. 456, § 25; p. 894, § 3: p. 895, § 6; R. S. 1835, p. 385, §§ 37, 38; Rogers v. Pacific R. R. Co., 35 Mo. 153. Section 7, Wag. Stat., p. 894, applies only to actions pending at the time the General Statutes of 1865 went

into effect.   R. S. 1835, p. 385-6, § 39 ; R. S. 1845, p. 698, § 16 ; R. S. 1855, p. 1025, § 16.

SHERWOOD, C. J.—The object of this writ is to test the legality of the confinement of Houston in the penitentiary, pursuant to judgment and sentence of the Scott circuit court for grand larceny, the crime being committed and indictment found prior to January 1st, 1877, though the trial did not occur until after an act went into effect, changing in certain cases what was theretofore known as grand larceny into petit larceny, and making also different provision for the punishment of crimes of the class for which the prisoner received his sentence.   Passing over all mere preliminary questions, we proceed to discuss the merits of the case.

The act referred to was approved March 1, 1877, went into effect July 28th of that year, and is as follows :   § 1. That section 25 of chapter 201 of the General Statutes of Missouri, be, and the same is hereby amended by striking out the word "ten" and inserting the word "twenty," so as to read as follows :   § 25.   Every person who shall be convicted of feloniously stealing, taking and carrying away any money, goods, right in action, or other personal property or valuable thing whatsoever, of the value of twenty dollars or more, or any horse, mare, gelding, colt, filly, ass, mule, neat cattle, sheep or hog belonging to another, shall be deemed guilty of grand larceny.

§ 2.   § 27 of the same chapter of the General Statutes be, and the same is hereby amended by striking out the word "ten" and inserting the word "twenty," so as to read as follows :   § 27.   Every person who shall steal, take and carry away any money or personal property or effects of another, under the value of twenty dollars, (not being the subject of grand larceny without regard to value,) shall be deemed guilty of petit larceny, and on conviction shall be punished by imprisonment in the county jail not exceeding

one year, or by fine not exceeding one hundred dollars, or by both such fine and imprisonment.

Section 6, (2 W. S., 895,) provides that: "No offense committed, and no fine, penalty or forfeiture incurred, previous to the time when any statutory provision shall be repealed, shall be affected by such repeal; but the trial and punishment of all such offenses, and the recovery of such fines, penalties and forfeitures, shall be had in all respects as if the provision had remained in force."

This section must be held as decisive of this case. According to it, had the old statute been absolutely repealed, the prisoner must still have met with punishment "in all respects as if the provision had remained in force." This is precisely the view taken of the effect of this section in *State v. Mathews*, (14 Mo. 133,) Mr. Justice Ryland in that case holding that the section just quoted, operated as a "saving clause" in the prevention of the operation of the repeal. Shall an amendment, a partial repeal, accomplish more than could a total one? This question would seem to furnish its own answer.

Besides, the language of the act of March 1st, 1877, is directed to the future and not the past: "Every person who shall steal," &c. And the general rule of construction is that legislation is to be regarded as prospective and not retrospective in its operation. *State v. Hays*, (52 Mo. 578); *Lewis v. Brackenridge*, (1 Blackf. 220.) This is especially true of laws relating to crimes and their punishment. There is positively nothing in the act under consideration, even remotely indicative of legislative intention, either to abrogate section 6, *supra*, or to affect in the slightest degree, antecedent criminal occurrences; and in my opinion if the legislature had evinced in the act of 1877 the most decided intention of making that act applicable to the punishment of prior transactions, it is to the last degree doubtful whether such act, regard being had to the terms thereof, would not have been violative of the constitutional prohi-

bition respecting *ex post facto* laws, i. e., criminal laws retrospective in their operation. A law of this description is said to be one "which renders an act punishable in a manner in which it was not punishable when committed." Laws, however, which mitigate the character or punishment of a crime already committed, may not fall within the prohibition, for they are in favor of the citizen." (2 Story on Const., § 1345 and cases cited.)

The first definition of an *ex post facto* law above given that it "renders an act punishable in a manner in which it was not punishable when it was committed," is readily understood; a bare inspection of the former and subsequent acts will speedily show whether any change has been made in the punishment to be inflicted. But the ground becomes vastly more debatable when the inquiry arises upon a particular statute, whether it does indeed mitigate the previously imposed punishment. There has been great diversity of opinion as to what in this connection, constitutes mitigation. In Texas, it has been held not to mitigate the punishment, where, for the death penalty was substituted the infliction of stripes, and this upon the ground of the peculiarly degrading character of the latter method of punishment, (*Herber v. State*, 7 Tex. 69). On the other hand in South Carolina, where the punishment, death, was before final judgment changed to fine, whipping and imprisonment, the new law was applied in passing sentence, (*State v. Williams*, 2 Rich. 418). In Indiana the law in force, punished perjury, by not exceeding 100 stripes. In a certain case, before trial, the punishment was changed to imprisonment in the penitentiary, not exceeding seven years. (*Strong v. State*, 1 Blackf. 193,) and the last act was held applicable and not obnoxious to constitutional objections. This decision has, however, met with criticism from Mr. Bishop, (1 Bish. Cr. L., § 219). On this point, Mr. Justice Cooley, with much pertinency, remarks: "But, what does go in mitigation of the punishment? If the law makes a fine less in amount, or imprisonment shorter in point of

duration, or relieve it from some oppressive incident, or, if it dispenses with some severable portion of the legal penalty, no embarrassment would be experienced in reaching a conclusion, that the law was favorable to the accused, and, therefore not *ex post facto*. But who shall say, when the nature of the punishment is altogether changed, and a fine is substituted for the pillory, or imprisonment for whipping, or imprisonment at hard labor for life for the death penalty, that the punishment is disminished, or at least not increased by the change made? What test of severity does the law or reason furnish in these cases? And must the judge decide upon his own view of the pain, loss, ignominy and collateral consequences usually attending the punishment? Or may he take into view the peculiar condition of the accused, and upon that determine whether, in his particular case, the punishment prescribed by the new law is more severe than that under the old or not?" (Cooley Const. Lim., 267). This view of the learned author, is in accord with decisions on this question in the State of New York, which meet with his evident approval.

In *Hartung v. People*, 22 N. Y. 105, Mr. Justice Denio speaking for the court said: "It is enough to bring the law within the condemnation of the constitution, that it changes the punishment after the commission of the offense, by substituting for the prescribed penalty a different one. We have no means of saying whether one or the other would be most severe in a given case. That would depend upon the disposition and temperament of the convict. The Legislature cannot thus experiment upon the criminal law. * * It is enough, in my opinion, that it changes the punishment in any manner, except by dispensing with divisible portions of it." This line of decision, which has become settled law in New York, (*Shepherd v. People*, 25 N. Y. 406; *Ratzky v. People*, 29 N. Y. 124; *Kuckler v. People*, 5 Park. Cr. Rep. 212,) I regard as enunciating the better doctrine, since it is easily understood, and the twofold test which it furnishes, readily applied, viz: Has a

State ex rel. Houston v. Willis.

change been effected in the prescribed punishment? If there has, and such change has not been brought about by a mere remission of some separable portion thereof, then the law, professing to effect such change, must be held, so far as concerns antecedent transactions, constitutionally inapplicable. Subjected to this test, the act of March 1st, 1877, cannot be held to apply to a crime committed anterior to its passage; for holding the above expressed views I shall not undertake to determine whether it would be more onerous upon the accused to suffer punishment in the penitentiary, under the old law or under the new, by imprisonment in the county jail, or by a fine, or by both fine and such imprisonment. Whether, then, reliance be placed upon the decisive provisions of section six, *supra*, or upon the constitutional inhibition, before noted; in either event, the result must be that the relator must be remanded into the custody of the Warden, and it is thus ordered.

My associates concur with me in the foregoing remarks, except that portion relating to the power of the Legislature, by the passage of a law to affect crimes of anterior commission; on this point, deeming it unnecessary, they decline the expression of opinion.

HOUGH, J., CONCURRING.—I concur in the judgment of the court remanding the prisoner to the custody of the warden.

I do not conceive that there is any constitutional question in this case. The act of March 1st, 1877, reducing the grade of the offense committed by the relator from grand larceny to petit larceny, is, by its terms, as well as by the provisions of the General Statutes, applicable only to offenses committed after the passage of the act, and this view of that act disposes of the case.

PRISONER REMANDED.