## James Lindzey v. The State.

CARRYING CONCEALED WEAPON. *Section 2985, Code of 1880, amended by Act of March 9, 1888. Ex post facto law. Case in judgment.*

In December, 1887, L. was indicted under Section 2985, Code of 1880, which made it a misdemeanor for any person to carry concealed certain weapons except when "having good and sufficient reason to apprehend an attack," or in some other specified circumstances; and which prescribed as the penalty for such offence a fine, not exceeding one hundred dollars, and in the event the fine and costs be not paid, then work at hard labor, not exceeding two months. An act of the legislature, approved March 9, 1888, amended Section 2985 of the Code by striking out the words "having good and sufficient reason to apprehend an attack," and providing, without any saving as to past offences, that the punishment for carrying concealed weapons shall be a fine, not exceeding one hundred dollars, "nor less than twenty-five dollars," and in the event the fine and costs be not paid, then hard labor, not exceeding two months, "nor less than one month." In May, 1888, L. was tried, convicted and sentenced to pay a fine of thirty dollars. *Held*, that L. could not be punished under the original statute, because the vindicatory part thereof had been repealed, and he could not be punished under the amended law, because, as to him, it was *ex post facto* and unconstitutional, for the reasons (1) that it precluded the defence of "having good and sufficient reason to apprehend an attack," and (2) changed, but did not mitigate, the punishment originally prescribed.

APPEAL from the Circuit Court of Sharkey County.

HON. J. H. WYNN, Judge.

The case is stated in the opinion of the Court.

*J. W. Downs* and *W. D. Brown*, for the appellant.

Appellant was indicted November, 1887, and convicted at the May term, 1888, under Section 2985 of the Code. After in-

dictment and before conviction the punishment for the offence was increased by Act approved March 9th, 1888. (See acts of 1888, chapter 54, page 89). There is in the amendatory act no saving clause authorizing the court to sentence under the law as it stood prior to the amendment, and to sentence appellant under the amendatory act would be a violation of his constitutional rights.

Section 2985 of the Code fixes a maximum but no *minimum* of punishment for the offence. The amendatory act fixes a minimum where there was none. This is clearly an increase of the penalty. On a conviction now the court *must* inflict a heavier punishment than *might* have been imposed prior to the amendment of the statute. The court's discretion, as it existed under Section 2985 of the Code, has been taken away.

This increase of punishment clearly makes the amendatory act *ex post facto* as to appellant, and he cannot, therefore, be sentenced under it. *Bishop on Criminal Law*, Vol. 1, Sec. 219; *Cooley's Constitutional Limitations*, 323-333.

*T. M. Miller*, Attorney-General, for the State.

The Act of 1888 does not warrant the infliction of any penalty that could not have been imposed under the Code of 1880 for carrying concealed weapons. If, therefore, the test of an *ex post facto* law is that it enlarges the penalty, then there is no cause of complaint here. If any change in the possible punishment depending on the discretion of the judge, but within a fixed limit amounts to an *ex post facto* law, then the state's side surrenders. The case is submitted on the reasoning and authorities found in Cooley on Constitutional Limitations, page 323, etc.

ARNOLD, C. J., delivered the opinion of the Court.

In December, 1887, appellant was indicted for carrying a concealed weapon. At that time the punishment prescribed by Sec. 2985 of the Code for such offence was by fine, not exceeding one hundred dollars, and, in the event the fine and costs were not paid, by hard labor, not exceeding two months; and at that time the statute did not prohibit one who had *good and sufficient reason to apprehend an attack*, from carrying concealed weapons.

In May, 1888, appellant was tried on the indictment, convicted and sentenced to pay a fine of thirty dollars; but prior to that date, the legislature, by the act approved March the 9th, 1888, amended Sec. 2985 of the Code by striking out the words *having good and sufficient reason to apprehend an attack,* and providing, without any saving clause as to past offences, that the punishment for carrying concealed weapons shall be by fine not exceeding one hundred dollars, *nor less than twenty-five dollars,* and, in the event the fine and costs were not paid, by hard labor, not exceeding two months, *nor less than one month.* It is urged by appellant that he cannot be punished under the old law, because it has been repealed; nor under the amended law, because as to him it is an *ex post facto* law, both under the State and federal constitutions.

The purpose and effect of the amendment to Sec. 2985 of the Code was to repeal so much of the section as fixed the punishment for carrying concealed weapons and permitted having good and sufficient reason to apprehend an attack to be a defence to the charge, and to prescribe a new and severer punishment for the offence. The punishment prescribed by the amendment was substituted for and, took the place of that provided by the section before it was amended. The section, as amended, made it unlawful for one to carry concealed weapons, though he might have good and sufficient reason to apprehend an attack, and it increased both the minimum of fine and imprisonment provided by the section before its amendment, and prescribed the only penalty for the offence.

In this state of the law, how can appellant be lawfully punished for the offence with which he is charged? It is better that any criminal shall go unpunished than that any provision of the constitution shall be disregarded, or that the foundations of the criminal law shall be unsettled.

After the amendment to Sec. 2985 of the Code was adopted, appellant could not be punished under the section as it existed before the amendment, because so much of it as related to the penalty had been repealed, and he could not be punished under the section as amended, because it operated prospectively from the date of the approval of the amendment, and there being no

saving clause as to offences committed before the passage of the amendment, it could not be applied to him.    *Wheeler* v. *State*, 64 Miss., 462.   As to him, the amended law was clearly an *ex post facto* law, first, because it abrogated the right which before existed of defending against the charge on the ground that he had good and sufficient reason to apprehend an attack, and made an act criminal which was not so at the time the amendment was passed; and second, because it changed but did not mitigate the punishment for the offence.   Cooley on Const. Lim., 321–329; 1 Bish. Cr. L., Sec. 281;  1 Kent Com., 409;   *Calder* v. *Bull*, 3 Dall., 386;  *Hartung* v. *People*, 22 N. Y., 95;  *Kring* v. *Missouri*, 107 U. S., 221;  *Com.* v. *McDonough*, 13 Allen, 581.

There is, perhaps, no provision of our state or federal constitution founded on broader or juster views of human rights and liberty than that which prohibits *ex post facto* laws.   Mr. Madison considered the clause of the federal constitution on the subject, as a " bulwark in favor of personal security and private rights."    Federalist, No. 44.   Mr. Hamilton ranked it as a security to liberty, equal to the writ of *Habeas Corpus*.   Federalist, No. 78.   Blackstone defines it to be an *ex post facto* law, " when, after an act indifferent in itself is committed, the legislature for the first time declares it to have been a crime, and inflicts a punishment upon the person who has committed it; " and he justly denounces such laws as more unreasonable than the methods of the Roman tyrant, who wrote his laws in very small characters and hung them upon high pillars, the more effectually to deceive and ensnare the people.   1 Bla. Com., 46. In the interest of personal rights and liberty, this definition has been enlarged and liberalized by the general course of judicial decision in this country.   In *Calder* v. *Bull*, 3 Dallas, 386, *ex post facto* laws were classified by Mr. Justice Chase, as follows: " 1st. Every law that makes an action done before the passage of the law, and which was innocent when done, criminal; 2d. Every law that aggravates a crime, or makes it greater than it was, when committed; 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed; 4th. Every law that alters the legal rules of evidence, and receives less or different testimony,

than the law required at the time of the commission of the offence in order to convict the offender." This view of the character of *ex post facto* laws, with reference to our constitutional provisions against them, has been generally accepted and followed as correct. Cooley on Const. Lim., 323.

Afterwards, in *Fletcher* v. *Peck*, 6 Cranch, 138, Chief Justice Marshall defined an *ex post facto* law to be " one which renders an act punishable in a manner in which it was not punishable when it was committed," and this definition has been regarded as distinguished for its comprehensive brevity and precision. 1 Kent. Com., 409. And later, in *Kring* v. *Missouri*, 107 U. S., 221, the Supreme Court of the United States reasserts the opinion expressed by Mr. Justice Washington, in *United States* v. *Hall*, 2 Wash., 366, that " an *ex post facto* law is one which in its operation makes that criminal or penal which was not so at the time the act was performed ; or which increases the punishment ; or, in short, which in relation to the offence, or its consequences, alters the situation of a party to his disadvantage." *Garvey* v. *People*, 6 Colorado, 559, and *State* v. *Willis*, 66 Mo., 131, are to the same effect.

Such being the nature of *ex post facto* laws, it is nevertheless true, that the punishment for offences already committed, may be changed by statute, provided the punishment is mitigated, and not increased or aggravated by the change. As the constitutional provision was enacted for protection against arbitrary and oppressive legislation, it is quite evident that it is not violated by any change in the law which goes in mitigation of the punishment. There has been much diversity of opinion as to what would constitute mitigation of punishment in such case, but the view best sustained by reason and authority is, that a law changing the punishment of offences committed before its passage, is objectionable, as being *ex post facto*, unless the change consists in the remission of some separable part of the punishment before prescribed, or is referable to prison discipline or administration as its primary object. Cooley on Const. Lim., 329. It is enough for courts to render judgment according to law, without being required to determine the relative severity of

different punishments, when there is no common standard in the matter by which the mind can be satisfactorily guided.

"If the law," says Judge Cooley, "makes the fine less in amount or imprisonment shorter in point of duration, or relieves it of some oppressive incident, or if it dispenses with some separable portion of the legal penalty, no embarrassment would be experienced in reaching a conclusion that the law was favorable to the accused, and therefore not *ex post facto*. But who shall say, when the nature of the punishment is altogether changed, that the punishment is diminished or increased by the change? What test of severity does the law or reason furnish in these cases? And must the judge decide upon his own view of the pain, loss, ignominy and collateral consequences usually attending the punishment, or may he take into view the peculiar condition of the accused, and upon that determine whether, in his particular case, the punishment prescribed by the new law is or is not more severe than that under the old law?" Cooley Const. Lim., 324.

In *Hartung* v. *People*, 22 N. Y., 95, where a law was held inoperative as to offences committed before its passage, Mr. Justice Denio said, "it is enough to bring the law within the condemnation of the constitution, that it changes the punishment after the commission of the offence by substituting for the prescribed penalty a different one. We have no means of saying whether the one or the other would be most severe in a given case. That would depend upon the disposition and temperament of the convict. The legislature cannot thus experiment upon the criminal law. * * * * It is enough in my opinion, that it changes the punishment in any manner, except by dispensing with some divisible portion of it. * * * * Any thing which, if applied to an individual sentence would fairly fall within the idea of a remission of a part of the sentence, would not be liable to objection. And any change which would be referable to prison discipline or administration as its primary object, might also be made to take effect upon past as well as future offences; such as changes in the manner or kind of employment of convicts sentenced to hard labor, the system of supervision, the means of restraint or the like. Changes of this sort might operate to

increase the severity of the punishment of the convict; but it would not raise a question under the constitutional provision we are considering."

The doctrine of this case is commended by being just, simple and readily understood, and it is well supported by authority. *Shepherd* v. *People*, 25 N. Y., 406 ; *Ratzky* v. *People*, 29 Id., 124; *Kuckler* v. *People*, 5 Parker Cr. Rep., 212; *Carter* v. *Burt*, 12 Allen, 424. Cooley Cons't Lim., 329.

*Clarke* v. *The State*, 23 Miss., 261, is not regarded as in conflict with this doctrine, for there, while the punishment for the offence had been changed, there was a saving clause as to prior offences, and the prisoner was sentenced under the law in force at the time the crime was committed.

.    *The judgment is reversed and the cause dismissed.*