## COURT OF APPEALS.

James Shepherd, plaintiff in error agt. The People, defend-
ants in error.

A *law* which makes an act punishable *in a manner in which it was not punishable
when committed,* or *which increases the punishment with which the act was
punishable when committed,* is *ex post facto* and *void.*

The plaintiff in error was convicted of *arson in the first degree,* committed in 1857,
which, under the Revised Statutes, was punishable with *death,* and was sentenced
under the act of 1860, which substituted *imprisonment for life* for the punish-
ment of death, to imprisonment in the state prison for life.

*Held,* that the provisions of the act of 1860, changing the *punishment* of arson in
the first degree, were intended to apply only to offences *thereafter committed ;*
but if it should be held otherwise, then that those provisions are *ex post facto*
and *void,* so far as they were intended to apply to a *crime* of arson in the first
degree, committed *before the passage of the act.* In either view of the act and
upon either holding, the judgment of the court below must be *reversed.*

Where a judgment against a prisoner is reversed upon the *ground alone that a
wrong judgment was given,* upon a lawful and regular trial and conviction, he
cannot constitutionally be *tried again:* he must be *discharged.*

(*This law would seem to fully meet and settle Mrs. Hartung's case; for although
there was no bill of exceptions in this case, and there was one in her case, yet the
judgments in both cases were reversed on the ground alone that there was a
wrong judgment given. It is difficult to see how the court can look into a bill
of exceptions when there is a wrong judgment brought up by the record, and
the error being created by a statutory law.*—Rep.)

*September Term,* 1862.

Sutherland, J.   When the crime of which the prisoner
was convicted was committed, it was punishable with death.
The prisoner was sentenced to imprisonment in the state
prison, at Sing Sing, for life.   The prisoner must have been
sentenced on the theory that the provisions of the act of
April 14, 1860, substituting imprisonment for life, for
death, as the punishment of arson in the first degree, were
intended to apply not only to an offence committed after
that act took effect, but also to the offence of which the
prisoner had been convicted, committed in 1857, before the
passage of the act.

The first section of the act of 1860 declared, that no

crime thereafter committed, except treason and murder in the first degree, shall be punished with death in this state. The second section makes two degrees of the crime of murder, defining them. The sixth section declares that every person convicted of murder in the second degree, shall be sentenced to imprisonment in one of the state prisons for life. By the seventh section it is declared that section one, of title one, of chapter one, of part four of the Revised Statutes, shall be amended so as to read as follows:

"Section 1. Every person who shall hereafter be convicted, first, of treason against the people of this state ; or second, of murder.; or third, of arson in the first degree, as those crimes are respectively declared in this title, shall be punished as herein provided."

The first section of title one, of chapter one, of part four, of the Revised Statutes, thus amended, originally read thus :

"Section 1. Every person who shall hereafter be convicted, first, of treason against the people of this state ; or second, of murder ; or third, of arson in the first degree, as those crimes are respectively declared in this title, shall suffer death for the same."

By the 9th section of the act of 1860, it is declared that the provisions of the act " for the punishment of murder in the first degree, shall apply to the crime of treason; and the punishment of murder in the second degree, as herein provided, shall apply to all crimes now. punishable with death, except as herein provided." The 10th section is : "All persons now under sentence of death in this state, or convicted of murder and awaiting sentence, shall be punished as if convicted of murder in the first degree under this act." The eleventh and last section of the act repeals section 25, and eleven other sections of the title of the Revised Statutes before referred to—section 25 being the section which prescribed the manner of executing capital punishment by hanging. The other repealed sections con-

tained certain regulations in respect to the execution of capital punishment in certain cases, or under certain circumstances.

It is perfectly plain that the legislature, by the act of 1860, intended to punish crimes of arson in the first degree thereafter committed, with imprisonment in a state prison for life; for section 6 of the act provides that punishment for murder in the second degree; and section 9 declares that the punishment of murder in the second degree " as herein provided, shall apply to all crimes now punishable with death, except," &c.; and arson in the first degree was then by the Revised Statutes punishable with death.

The prisoner was sentenced under the act of 1860, and upon a construction of that act that the provisions of the act changing the punishment for arson in the first degree from death to imprisonment for life, were intended to apply to a crime of arson in the first degree, committed before the passage of the act, and when the provision of the Revised Statutes punishing the crime with death was in full force. I doubt whether such is the true and reasonable construction of the act. What particularly distinguishes the question in this case from that in the case of *Hartung* agt. *The People*, (22 *N. Y. R.*, 95,) is, that by the 10th section of the act, it is expressly declared, that all persons then under sentence of death, or convicted of murder and awaiting sentence, should be punished as if convicted of murder in the first degree under the act. This section applied to Mrs. Hartung's case. She was under sentence of death for murder when the act of 1860 was passed. The question was whether she could be punished under the act; and it was held that she could not; that so far as the act attempted to subject to the new punishment of death and previous imprisonment at hard labor, persons who had been convicted of murder, it was *ex post facto* and void. The act does not expressly declare that the provisions of the act changing the punishment of arson in the first degree

should apply to offences committed before the passage of the act. In the absence of express words showing an intention that these provisions should be retroactive, it is not to be presumed that they were intended to be so. (2 *Dwarris on Statutes*, 540; *Tillman* agt. *Lansing*, 4 *John.*, 45; *Dask* agt. *Van Bleek*, 7 *John.*, 477; *Johnson* agt. *Burrell*, 2 *Hill*, 238; *Lawrence* agt. *Miller*, 2 *Comst.*, 245.) Certainly, it is not to be presumed that the legislature intended to pass an unconstitutional *ex post facto* law, and if the provisions of the act changing the punishment of arson in the first degree should be construed to apply to offences committed before the act, it will hereafter be shown that it must also be held that, so far, it was *ex post facto* and unconstitutional.

The first section of the act is exclusively and expressly prospective. The words are " no crime hereafter committed," &c. I find nothing in the subsequent provisions of the act except, perhaps, the 11th section, repealing certain sections of the Revised Statutes, regulating the execution of capital punishment, going to show, that the provisions of the act changing the punishment of arson in the first degree were intended to be retrospective. The fact that the 10th section expressly declares, that persons who were then under sentence of death, or convicted of murder and awaiting sentence, should be punished as if convicted of murder in the first degree under the act, certainly goes to show that the provisions of the act preceding the 10th section were intended to be prospective merely. The 10th section would probably not have been inserted in the act if the preceding provisions of the act had been intended to be retroactive.

The passage of the act of April 17, 1861, reviving and undertaking to re-apply the punishment for murder and for arson in the first degree, in force at the time the act of April 14, 1860, was passed, to offences committed previous to the day that act took effect, certainly does not show

that the act of 1860 was not intended to have a retrospective operation; but the passage of the act of April 17, 1861, must certainly be ·deemed a conclusive legislative construction of the act of 1860, to the effect that that act presently abolished or repealed the provisions of the Revised Statutes prescribing the punishment of murder or of arson in the first degree, so that the prisoner (who was sentenced prior to the passage of the act of April ·17, 1861) could not have been sentenced to suffer death under the provisions of the Revised Statutes in force when his crime was committed, whatever may be deemed to be the force or effect of the act of 1861.   Nor does it follow that the provisions of the act of 1860, changing the punishment of arson in the first degree to imprisonment for life, should be construed as intended to have a retrospective operation, if that act should be deemed to have repealed the provisions of the Revised Statutes punishing that crime.   If the legislature, by the act of 1860, carelessly or unintentionally repealed the law punishing the prisoner's crime, that is no reason why reasonable and well-settled principles of construction should be disregarded, for the purpose of punishing it under that act.   If the act of 1860 presently repealed the provisions of the Revised Statutes prescribing the punishment of death for arson in the first degree, and the provisions of the act of 1860, changing that punishment to imprisonment for life, were intended to apply only to offences thereafter committed, the consequence was, that the prisoner's crime was left without any law to punish it. (*Dwarris*, 676, 677; *State* agt. *Daley*, 29 *Conn.*, 272; *and cases cited by Judge* Denio *in the case of Mrs. Hartung.*)

As the prisoner was sentenced before the passage of the act of April 17, 1861, considering that the first section of the act of 1860 was expressly prospective, that there are no words of express repeal in the act, except the 11th section, that the words of the 7th section are : " section 1, of title 1, &c., of the Revised Statutes, shall be amended," &c.,

I think the question was, whether the prisoner could not have been sentenced under the provisions of the Revised Statutes, in force when his crime was committed, upon the construction of the act of 1860, that it did not repeal the provisions of the Revised Statutes as to offences committed before its passage ; that the amendment by the 7th section, and the other provisions of the act changing the punishment of arson in the first degree, were intended to apply only to offences thereafter committed, leaving offences committed before the passage of the act to be punished under the Revised Statutes. If the legislature had expressly declared that the amendment, by the 7th section, was to apply only to offences thereafter committed, such, I think, would have been the construction and effect of the act. I think the question was, from the whole act, whether that was not its reasonable construction, in the absence of any such express declaration. Certainly, my doubt would have been, independent of the act of 1861, whether it could properly be said, that the act of 1860 does repeal the provisions of the Revised Statutes, punishing treason, murder and arson in the first degree, except so far as the act, by the 10th section, attempts to apply the new punishment under the act, of imprisonment for at least one year previous to the execution of the death penalty, to persons then under conviction for murder, and except so far as the 11th section expressly repeals the sections of the Revised Statutes regulating the manner of the execution of the death penalty, &c.

In *State* agt. *Daley*, (29 *Conn.*,) before cited, it would appear from the report of the case, that section 6 of the act prescribing the original punishment, was not only altered, but expressly repealed by the new act. So in most, if not all, of the cases cited by Judge DENIO, in *Mrs. Hartung's* case, except that of *Commonwealth* agt. *Devane*, (1 *Binney*, 601,) the original act was expressly or plainly impliedly repealed by the subsequent act prescribing the

new punishment or penalty, and the case of *Commonwealth* agt. *Devane*, I think was wrongly decided.

No doubt the act of April 17, 1861, was passed upon the careless assumption that this court, in *Mrs. Hartung's* case, had decided that the act of 1860 had repealed the provisions of the Revised Statutes punishing treason, murder and arson in the first degree, and that offences committed previous to the passage of the act of 1860 could not be punished under it; when, as I think, that the only point that can be said to have been decided in that case was, that so far as that act attempted by the 10th section to subject to the new punishment of death and previous imprisonment at hard labor, persons already under conviction for murder, it was *ex post facto* and void. The act of 1861, having been passed upon an erroneous assumption, has increased the doubts and complications resulting from the extraordinary act of 1860, and one might be almost excused for thinking that both acts were mainly designed to punish judges who should unfortunately be called upon to construe and apply them. But the question presented by the record in this case is, not whether the prisoner might have been sentenced under the provisions of the Revised Statutes to suffer death, or whether, if the judgment should be reversed, and the court can and should award a new trial, and he should be tried and convicted again, he could be sentenced to suffer death under the Revised Statutes, or the act of 1861, or both; but the question presented by the record is, whether the sentence to imprisonment for life, which was pronounced upon him under the act of 1860 was legal. I think it was not, because, for reasons before stated, I think the provisions of the act changing the punishment for arson in the first degree to imprisonment for life must be deemed to have been intended to apply only to offences committed after the act should take effect.

If, however, the provision of the act changing the punishment of arson in the first degree should be held to have

been intended to apply to offences committed before the passage of the act, in my opinion, so far the act should be held to be *ex post facto* and void.

I think this is shown conclusively by Judge DENIO in his opinion in the *Hartung* case; but I will add, that a law which increased the punishment with which an act was punishable when committed, would be plainly *ex post facto*, although it might be said, perhaps, that the new law did not change the manner of the punishment, as for instance, if when the act was committed, it was punishable with thirty days' imprisonment, and the new law declared that it should be punished with forty days' imprisonment; for, as to the number of days' imprisonment by which the punishment was increased, the case would be precisely the same as if the act when committed had not been punishable at all, and under the new law the criminal could not be sentenced to any less number of days than were prescribed by it.

So, also, if an act when committed was punishable by thirty days' imprisonment, a subsequent law changing the punishment of the act to thirty stripes or thirty dollars fine, would be plainly *ex post facto;* for, when the act was committed, it was not punishable in that manner, and in view of the constitutional prohibition of *ex post facto* laws, the case would be precisely the same as if the act had not been punishable at all when committed. If you do not hold a law punishing an act in a different manner than it was punishable when committed to be *ex post facto*, irrespective of the question whether the new punishment is or is not more merciful or lenient, you will leave it to the discretion of the legislature or of judges to say whether the new punishment is or is not more merciful or lenient than the old; and such a construction of the constitutional prohibition would impair its value and certainty of protection.

A law, the effect of which is simply to reduce or diminish the punishment with which an act was punishable when committed, cannot be an *ex post facto* law, because it inflicts

no new or additional punishment. In *Fletcher* agt. *Peck*, (6 *Cranch*,) Chief Justice MARSHALL defined an *ex post facto* law to be one which makes an act punishable "in a manner in which it was not punishable when committed." Add to this, "or which increases the punishment with which the act was punishable when committed," and I think the definition will be as complete, and certain, and safe, as can well be made.

It is plain, then, that the moral or philosophical disquisition as to whether imprisonment for life, at hard labor, is better or more desirable, or less severe than death, has really nothing to do with the question whether the act of 1860, assuming that it was intended to have a retrospective effect, is so far *ex post facto* or not. Imprisonment for life, at hard labor, is an entirely different kind or manner of punishment from punishment by death. The act of 1860 entirely changed the punishment for arson in the first degree. It changed it from death to imprisonment for life; the two punishments have no elements in common. If it should be held that the act of 1860 merely diminished the punishment wherewith the prisoner's crime was punishable when committed, because imprisonment for life, at hard labor, is generally considered a more lenient punishment than death, or one which the criminal would prefer to suffer; then it could be held that a law changing the punishment of an act from imprisonment for a certain number of days or months to a fine, or from a certain number of stripes to imprisonment for a certain number of days, was not *ex post facto*, because the court might think the new punishment more lenient than the old, or that the criminal would prefer to suffer the new punishment. Indeed, as I have before said, if you depart from the principle that a law is *ex post facto*, because it punishes the offence in a different manner, or by a different kind of punishment than it was punishable with when committed, the question whether the law is *ex post facto* is left to judicial discretion;

for the decision of the question must depend upon the opinion of judges as to whether the new punishment is more severe than the old, or whether the new punishment would or would not generally be preferred by criminals to the old.

The construction of constitutional limitations should be left as little as possible to either legislative or judicial discretion.

My conclusion is, then, that the provisions of the act of 1860, changing the punishment of arson in the first degree, were intended to apply only to offences thereafter committed.* But if it should be held otherwise than that, those provisions are *ex post facto* and void, so far as they were intended to apply to a crime of arson in the first degree, committed before the passage of the act. In either view of the act, and upon either holding, the judgment of the court below must be reversed.

But an important question remains to be considered, which is, ought this court, upon reversing the judgment, to order a new trial or the discharge of the prisoner? In looking at this question, I think we must assume that the prisoner, if a new trial is ordered, might be sentenced to suffer death under the Revised Statutes or the act of April 17, 1861, or both, if he could be lawfully tried again, and was tried and convicted. For we must assume that no opinion that this court might now express upon the question, whether if the prisoner should be again tried and convicted he could be sentenced to suffer death, would prevent such sentence; that question not being raised by the record before us.

Section 24 of the article of the Revised Statutes relating to writs of error on judgments, and *certioraris* in criminal cases, (2 *Rev. Stat.*, 741, § 24,) provides, "if the supreme

---

* As to this point, DENIO, Ch. J., was of a contrary opinion. SELDEN, J., expressly reserved himself upon the point, and none of the other judges expressed an opinion.—*Reporter Court of Appeals*.

court (upon a writ of error) shall affirm such judgment, it shall direct the sentence pronounced to be executed, &c. If the supreme court shall reverse the judgment rendered, it shall either direct a new trial, or that the defendant be absolutely discharged."

There was no bill of exceptions in this case; but if there had been, it is very clear that if the supreme court had reversed the judgment upon the ground that a wrong sentence had been pronounced, that court could not have directed the general sessions to proceed and pronounce the proper sentence. By the statute the supreme court, on reversing the judgment, could only grant a new trial or absolutely discharge the prisoner.

Upon reversing the judgment, this court must either direct a new trial or the discharge of the prisoner; it cannot direct any other judgment to be given on the conviction. This would have been so, had there been a bill of exceptions *a fortiori* where there is none.

Previous to the law giving a defendant in a criminal case a right to a bill of exceptions, (2 *Rev. Stat.*, 738, § 21,) a new trial could not be granted on the merits by any court in any case of felony. (*The People* agt. *The Judges of Dutchess Oyer and Terminer*, 2 *Barb.*, 286; *The People* agt. *Comstock*, 8 *Wend.*, 549, *and authorities there cited.*)

But by the common law a new trial could be granted in a case of felony, when there had been a *mis-trial* relating to the regularity of the organization of the court, or of the impanneling of the jury, or, perhaps, conduct of the jury.

Thus in *Arundel's* case, (6 *Coke*, 14,) where the defendant had been tried by a jury returned from a certain city, instead of a certain parish, and had been convicted, and moved in arrest of judgment, on that ground, it was adjudged that the jury ought to have come in from the parish and not the city, and that the trial was insufficient, and a new *venire* was awarded to try the issue again.

So in the case of the *People* agt. *McKay*, (18 *John.*, 212,)

where the defendant was indicted, tried and convicted of murder, and moved in arrest of judgment, on the ground that the *venire* which had been issued was a nullity, and the court adjudged that it was a nullity, a new trial was ordered.

In his opinion in this case, Ch. J. SPENCER refers to a case as having occurred within his knowledge, where the defendant was tried and convicted of murder, and a new trial was granted, on the ground of the misconduct of the jury in separating after agreeing and before rendering their verdict. So in *Cancemie's* case, (18 *N. Y.*, 128,) since the Revised Statutes, where the defendant, with his own consent, was tried and convicted by a jury consisting of but eleven jurors, the judgment was reversed and a new trial ordered. There was a bill of exceptions in this case, but the judgment was reversed and a new trial ordered on the record alone.

In all these cases the new trial was awarded on the ground that there had been no lawful trial ; on the ground of irregularity in the impanneling, or conduct, or organization of the jury, and on the record alone.

In the principal case the indictment was sufficient ; the court at which the defendant was tried was a court of competent jurisdiction ; the jury was regularly impanneled, and rendered a lawful verdict; and the judgment, if reversed, must be reversed upon the record alone, and upon the ground alone that a wrong judgment was given upon a lawful and regular verdict; and the question is, whether, in such a case, the court should order a new trial ? In view of the provision of the Revised Statutes, above referred to, expressly authorizing the court, upon reversing the judgment, to either direct a new trial, or that the prisoner be discharged, I think the court should not direct a new trial if the prisoner could plead his former regular trial, and conviction in bar of another trial. The circumstance that the counsel of the prisoner, on moving in arrest of judg-

Shepherd agt. The People.

ment, also asked for a new trial, I regard as of no conse-
quence. The constitutional provision is, " No person shall
be subject to be twice put in jeopardy for the same offence."
(*Constitution of State, art.* 1, § 6.) This provision may be
considered as addressed to courts; and if the prisoner is
within its protection, he ought to be discharged, though
his counsel did personally ask for a new trial. The
question is, then, whether the prisoner, if the judgment is
reversed upon the ground alone that a wrong judgment was
given upon a lawful and regular trial and conviction, can
constitutionally be tried again ? It is clear to me that he
cannot. In the case of *The People* agt. *Taylor*, (3 *Denio*,
97,) Judge Bronson said : " If a wrong judgment be given
against a defendant, which is reversed on error, (there
being no bill of exceptions,) the court of review can neither
give a new judgment against him, nor send the case back
to the court below for a proper judgment; " (*citing The
King* agt. *Brown*, 7 *Add. & Ell.*, 58; *Sheppard* agt. *Com-
monwealth*, 2 *Metc.*, 419; *Christian* agt. *Commonwealth*, 5
*id.*, 530; *and The King* agt. *Ellis*, 5 *Barn. & Cress.*, 395.)

These cases fully establish the rule as stated by Judge
Bronson. In the case of *O'Leary* agt. *The People*, (4 *Park.
Crim. R.*, 187,) where the prisoner was regularly tried,
and the jury rendered a verdict which would have autho-
rized a judgment as upon a conviction for a simple assault
and battery, but did not authorize the judgment that was
rendered, as upon a conviction for felony, the supreme court
upon reversing the judgment, on writ of error, discharged
the prisoner, referring to Judge Bronson's opinion in *The
People* agt. *Taylor*.

These cases are probably sufficient to show that a new
trial should not be directed in this case; but in view of the
provision of the statute which was not referred to either
in *People* agt. *Taylor* or the case last cited, and in view of
the great importance of the question in this case not only,
but in other capital cases in which the question has arisen,

since the act of 1860, I shall examine the question further. In 1st *Inst.*, 391, *a.*, it is said: "The difference between a man attainted and convicted, is, that a man is said convict before he hath judgment, as if a man be convict by confession, verdict or recusance ; and when he hath his judgment upon the verdict he is said to be attaint." It is further said: "By a conviction of a felon, his goods and chattels are forfeited; but by attainder, that is, by judgment given, his lands and tenements are forfeited, and his blood corrupted, and not before." So in *Jacobs' Law Dict.*, (*Attainted,*) it is said: "Attainder of a criminal is larger than conviction; a man is convicted when he is found guilty or confesses the crimes before judgment had, but not attainted till judgment is passed upon him." This shows the technical common law definition of the word *convict* or *convicted;* a felon was convicted by the verdict of a jury, he was attainted by the judgment rendered on the verdict.

One would think from this common law definition of the word convict or convicted, that by the common law the plea of *autrefois* convict implied merely a regular trial and verdict of guilty, or a confession upon a sufficient indictment. I think the books show this was so. In *Daly's* case, (4 *Coke*, 40,) one Wetherel brought an appeal against Darby of murder ; the defendant pleaded not guilty, and was found guilty of homicide, and had his clergy; and afterwards was indicted for murder, and he pleaded his former conviction in the appeal at the suit of the party, and it was adjudged a bar, and thereupon he was discharged, "because a man's life should not be twice put in jeopardy for one and the same offence."

In *Vaux's* case, (4 *Coke*, 45,) it is said, "if a man is convicted either by verdict or confession upon an insufficient indictment, and no judgment thereupon given, he may be again indicted and arraigned, because his life was never in jeopardy, &c." This implies, if the indictment is sufficient, that the conviction is a bar, though no judgment is given

upon it. The same case shows that a lawful conviction by
verdict on an insufficient indictment, followed by a judg-
ment, is a bar to a second trial until the judgment is
reversed. *Hawkins* (*P. C. Book* 2, *ch.* 36, § 10,) says : "The
plea of *autrefois* convict seems chiefly to depend on the rea-
son that the party ought not to be brought twice into dan-
ger for the same crime ; upon which ground it seems
agreed that a conviction, upon an appeal or indictment, of
burglary or other felony may be pleaded to an indictment
or appeal for the same felony." Again, he says, (§ 15, *same
ch.*,) " But it seems clearly settled that whenever the record
on which a man is convicted of manslaughter, and admitted
to his clergy, on an indictment or appeal of murder, is erro-
neous either in respect of insufficiency in the indictment, or
for a mis-trial, so that his life was not in danger at the trial,
he cannot plead such conviction and clergy thereon in bar
of a second indictment or appeal."

*Blackstone* says, (4 *Black. Com.*, 336,) citing *Hawkins:*
" The plea of *autrefois* convict, or a former conviction for
the same identical crime, though no judgment was ever
given, or perhaps ever will be, (being suspended by the
benefit of clergy or otherwise,) is a good plea in bar."

*Chitty* says : " In order to plead this plea (*autrefois* con-
vict) with effect, the crime must be the same for which the
defendant was before convicted, and the conviction must
have been lawful on a sufficient indictment. And if he has
neither received sentence nor prayed the benefit of clergy,
this plea is said not to be pleadable if the former indict-
ments were invalid." (1 *Chitty Crim. L.*, 462.)

In the case of the *People* agt. *Barrett*, (2 *Caines Rep.*,
304,) where the prisoner had pleaded to the indictment,
the jury been sworn and evidence offered, and the public
prosecutor, without the prisoner's consent, had withdrawn
a juror, because he was unprepared with his evidence, it
was held that the prisoner could not afterwards be tried
on the same indictment. Held, that he might be tried on

another indictment for the same offence, in 1 *John. R.*, 66, where it appeared that the first indictment was defective.

In the case of the *People* agt. *Casborus*, (13 *John.*, 351,) it was held that the former indictment and trial was no bar where the judgment had been arrested, but this was upon the ground that it was presumed that the judgment was arrested upon the ground that the indictment was defective.

In *State* agt. *Benham*, (7 *Conn.*, 414,) where the judgment was suspended, it was held that the verdict constituted the bar.

In *State* agt. *Merrell*, (2 *Serg.*, 24,) that the verdict was a bar when the judgment was improperly arrested upon a good indictment.

In *Dyer* agt. *Commonwealth*, (23 *Pick.*, 404,) there was a special verdict which did not authorize the judgment entered on it, and the judgment was reversed, and the prisoner discharged.

In the *People* agt. *Goodwin*, (18 *John.*, 202,) Ch. J. SPENCER said that the rule that no person shall be subject for the same offence to be twice put in jeopardy of life or limb, meant that no man shall be twice tried for the same offence.

The prisoner, James Shepherd, having been regularly and lawfully tried, and convicted on a good indictment, and there being no bill of exceptions, the authorities leave no room for doubt that he is entitled to the protection of this common law and constitutional rule.

In *Mrs. Hartung's* case there was a bill of exceptions, and there was a new trial ordered. It must be conceded that the judgment was not reversed on the bill of exceptions, but it is not probable that the question whether the prisoner should be discharged or a new trial ordered was much considered in that case.

My conclusion is, that the judgment against the prisoner, James Shepherd, should be reversed, and he should be discharged.

.DENIO, Ch. J., SELDEN, WRIGHT and ALLEN, JJ., concurred.