THE STATE OF KANSAS v. PATRICK O'SHEA.

No. 11109.

DEFECTIVE VERDICT—*information under § 49 of Crimes Act, verdict of guilty not specifying degree, defective, though it add "as charged in information."* A verdict in the following form—"We, the jury impaneled and sworn in the above entitled case, do upon our oaths find the defendant guilty of an assault with intent to kill as charged in the information"— is insufficient to support a sentence to confinement at hard labor in the penitentiary for eight years under section 39, chapter 100 of the General Statutes of 1897. It fails to show the degree of the offense of which the jury convicted the defendant, as required by section 239 of the Criminal Code.

Appeal from Sedgwick District Court. D. M. Dale, Judge. Opinion filed July 8, 1898. *Reversed.*

*L. C. Boyle*, Attorney General, *S. B. Amidon*, County Attorney, and *J. F. Conly*, Assistant County Attorney, for the State.

*Adams & Adams*, for appellant.

ALLEN, J. The appellant was charged, under section 39, chapter 100, of the General Statutes of 1897, with an assault on James Dawson with intent to kill him. On this information he was tried, convicted, and sentenced to the Penitentiary for a term of eight years. From this conviction he has appealed to this court.

In view of the conclusion reached, it is unnecessary to enter into any minute consideration of the facts. A general statement only will be made. Patrick O'Shea kept a saloon in the north part of Wichita. He had lived for seven or eight years with a woman named Anna Whaley, to whom he was never married. They lived together at his saloon until some time in the fall of 1897, when Miss Whaley went away with Dawson.

38—59 KAN.

On Sunday, the fourteenth of November, 1897, Dawson and Miss Whaley went to O'Shea's place about eleven o'clock in the forenoon. They drank a great deal together. O'Shea denies having been drunk. About four or five o'clock in the afternoon, according to O'Shea's testimony, Dawson was quarreling with Miss Whaley and had a pistol drawn on her. O'Shea interfered. A scuffle ensued, during which the pistol was discharged, inflicting a flesh wound in Dawson's arm. Dawson denied any recollection of what took place at that time, and claimed that he was so drunk he did not know what he was doing. A policeman came in, disarmed Dawson, and quieted the disturbance. After that, Dawson took a street car and went down into the city to his room.

Dawson testifies that when he went to O'Shea's place in the morning he had $300 with him. At his room he missed his money. About nine o'clock in the evening he took a hack and drove back to O'Shea's place. He went to the back door and knocked. O'Shea asked, "Who is there?" He answered, "Ed"; O'Shea then said, "All right, Ed, come around to the front." Dawson did so, and went in, He leaned on the bar and said, "Paddy, I lost my leather down here this afternoon." O'Shea said, "You are a damned lying son of a bitch," raised his revolver, shot, and hit him in the side. Dawson turned to go out. O'Shea shot again, and hit him in the back, causing him to fall on the floor. O'Shea then came up and kicked him two or three times in the ribs. This is Dawson's version of the matter. O'Shea's is quite different, as to the most essential facts. Dawson states that when he went back to find his money he was unarmed. O'Shea testifies that when Dawson came to the back door, in answer to his question, "Who is there?" Dawson said, "The

Kid "; that he had his money in a leather collar-box,
and his gun lying on the bar; that he was standing
by the bar, between eight and twelve feet from the
door, when Dawson came in; that as he came in,
Dawson said, "You son of a bitch," and raised his
gun; that he (O'Shea) raised his gun and fired, and
that Dawson reeled and fell, and his gun dropped from
his hand. An officer then came in, to whom O'Shea
surrendered. Testimony was also introduced by the
defendant tending to corroborate O'Shea's statement
that Dawson was armed. There was also testimony
as to threats made by Dawson, and communicated to
O'Shea, between the time Dawson left in the after-
noon and came back at night.

In charging the jury, the court gave full instruc-
tions with reference to the defense defined in section
39, before mentioned, and also with reference to as-
sault and battery, which the jury were told was in-
cluded in the charge. No reference was made to the
offense defined by section 40 of the same chapter. As
applied to the facts of this case, the essential differ-
ence between sections 39 and 40 is that section 39 re-
quires that the assault be made on purpose and of
malice aforethought, with intent to kill; while section
40 defines a lower grade of offense, in which the ele-
ment of malice aforethought is not included. In order
to sustain a conviction under section 40, it is only
necessary to prove that the assault was made under
such circumstances as would have constituted man-
slaughter if death had ensued. If the truth is that
Dawson made an assault on O'Shea, but failing in his
attempt was unnecessarily shot by O'Shea after he
had turned to go out of the saloon, a conviction might
have been had under section 40. Under instructions
incomplete in this particular the case was submitted
to the jury, who rendered the following verdict—

"We, the jury duly impaneled and sworn in the

above entitled case, do upon our oaths find the defendant guilty of an an assault with a deadly weapon with intent to kill, as charged and set forth in the information.''

This verdict the court construed as a verdict of guilty under section 39, and passed sentence on the defendant of confinement in the Penitentiary for eight years — three years more than is warranted on a conviction under section 40. The requirement of section 239 of the Criminal Code, that the jury shall specify in their verdict of what degree of the offense they find the defendant guilty, has caused very nice and embarrassing questions to arise in a number of cases; but it may now be deemed the law of this state, well settled by a line of decisions, that the degree of offense of which the conviction is had must be determined from the verdict itself, and that the addition of the words '' as charged and set forth in the information,'' is insufficient to show that the jury intended to find the defendant guilty of every element of the principal crime charged in the information. *The State v. Reddick*, 7 Kan. 143 ; *The State v. Huber*, 8 id. 447 ; *The State v. Treadwell*, 54 id. 513, 38 Pac. 813 ; *The State v. Scarlett*, 57 id. 252, 45 Pac. 602 ; *The State v. Pickering*, 57 id. 326, 46 Pac. 314.

It would appear that the attention of the court was not challenged directly to the provisions of section 40 and its applicability to the facts presented by the case on trial. The claim of the State was that the defendant was guilty under section 39 of a premeditated attempt to commit murder. The claim of the defense was that the action of the defendant was justifiable because done in self-defense. The fact that the defendant shot Dawson and inflicted the wounds from which he suffered, was admitted. The principal acts of the defendant charged to have been criminal, he

admitted having done.    The matter in issue to be tried was the motives prompting those acts, and the existence or want of justification therefor.    The verdict finds the defendant guilty of the acts and also of an intent to kill; but it fails to state either that the acts were done on purpose or of malice aforethought. To constitute the crime defined by section 39 these elements are essential.    It may be doubted whether the verdict would be sufficient to sustain a judgment under section 40.    The judgment in fact entered was under section 39, and the jury under the instructions of the court were not required to consider whether the defendant was guilty of the offense defined by section 40.    In this state of the case we need not determine the question whether the form of the verdict is suf-· ficient to sustain a sentence under section 40.    The insufficiency of the verdict necessitates another trial.

What has been said concerning the failure of the court to charge with reference to the offense defined by section 40 has been for the purpose of explaining the question arising on the verdict, rather than of considering whether the court erred in failing to instruct with reference to section 40, where no such instructions were asked.    On a re-trial, however, it will be incumbent on the court to carefully charge the jury not only with reference to the principal offense but also with reference to the minor offenses included in it.

Many other criticisms on the instructions are advanced by counsel for the appellant, but we find nothing substantial in any of them.    On all other propositions the law seems to have been fully, correctly and clearly stated to the jury.

At the trial the defendant called witnesses to prove his own good character for peace and quietude and also for honesty and integrity.    The court admitted the evidence as to the former, but excluded that concerning the latter.    The theory on which evidence as

to honesty was offered is that it tended to rebut the charge that O'Shea had taken Dawson's money. The court ruled correctly. He was not on trial for robbery or larceny.

Complaint is also made of the exclusion of evidence offered for the purpose of showing that Dawson was a robber, and had recently robbed a post-office in New Mexico. In this also the ruling of the court was right. The defendant had no commission to kill robbers, and if Dawson was in fact a criminal, as claimed, it would not tend to exculpate O'Shea. While this case strongly illustrates the natural association of one crime with another, it also exemplifies the rigidity with which the law disconnects one criminal charge from another. According to his own oath, the defendant was a daily violator of at least two of the criminal statutes of the State. For three or four years he had kept a saloon, and for a still longer time he had cohabited with a woman not his wife. He was not on trial for either of these crimes. Although drunkenness and lewdness naturally and often lead to brawling and murder, guilt of these does not prove guilt of attempted murder. The same strictness of proof is still required as in the case of a defendant whose character is irreproachable in these particulars. Unfortunately there are too many persons afflicted with such moral blindness that they do not comprehend the turpitude of one vice though perhaps keenly alive to the enormity of others. The law apportions its punishments according to the magnitude of the offense, and allows only a separate trial and separate punishment for each.

In this case we are forced to order a new trial because the jury has not been specific in finding the elements of criminality of which they convicted the defendant.

The judgment is reversed and the cause remanded for a new trial.