# THE STATE OF NORTH DAKOTA v. ROBERT S. NOAH.

### (124 N. W. 1121.)

**Homicide — Murder — Degrees.**

1. The crime of murder is divided into two degrees in this state, dependent on the facts attending the killing; that is, the absence or presence of premeditation and deliberation. These degrees do not constitute distinct crimes, but degrees of the crime of murder.

**Criminal Law — Murder — Degree — Form of Plea.**

2. Section 8807, Rev. Codes 1905, providing that, whenever a person prosecuted for murder pleads guilty, he shall designate in his plea whether he pleads guilty of murder in the first or second degree, is not complied with by a plea that he pleads "guilty as charged in the information." A plea in compliance with said section should be positive and definite as to the degree, and any indefiniteness in respect to the degree of crime is not remedied by a reference to the information in cases where the offense is divided into degrees.

**Criminal Law — Murder in First Degree — Plea Where Two Offenses are Included in Information — Sufficiency.**

3. Under an information charging murder in the first degree by express aver-

ments, and designating that degree by name, a plea that defendant is "guilty as charged in the information" is indefinite as to the degree to which he pleads guilty, as murder in the second degree is also charged in such information.

**Homicide — Murder — Form of Information — Plea — Degree.**

4. The fact that the information designates the offense as murder in the first degree does not control as to the degree, as that depends upon the facts alleged, and not upon the conclusion of the pleader or grand jury.

**Same — Designation of Degree — Surplusage.**

5. The fact that the offense is so designated is mere surplusage, and does not subject the information to attack on that ground.

**Same — Instructions — Demeanor of Accused.**

6. In cases where a jury is impaneled to determine the punishment to be inflicted upon a plea of guilty in murder cases, it is improper to instruct the jury that they may consider the demeanor of the defendant while in court, where he is not called as a witness.

**Homicide — Murder — Jury — Fixing Penalty on Plea of Guilty.**

7. It is improper to charge the jury, under such circumstances, that the court has the power to reduce the penalty inflicted by the jury, if they imposed the death penalty, as it tended to give the jury to understand that the whole responsibility was not on them.

Opinion filed February 3, 1910.

Appeal from District Court of Ward county; *Goss,* J.

Defendant was informed against for murder in the first degree. He pleaded "guilty as charged in the information." The court submitted the question of punishment to a jury, and it determined that the death penalty should be inflicted. Sentence of death was pronounced pursuant to verdict. Defendant appeals.

Reversed.

*Purcell & Divitt,* for appellant.

*Andrew Miller,* Attorney General, and *C. L. Young,* Assistant Attorney General, for respondent.

MORGAN, Ch. J. On the 3d day of April, 1908, the state's attorney of Ward county informed against the defendant and filed an information against him, in which he was charged with murder in the first degree. On the 7th day of April, he was arraigned under such information, and plead "guilty as charged in the information." The trial court

impaneled a jury for the purpose of determining the punishment to be inflicted upon the defendant. After taking the testimony of witnesses, and the jury being charged by the court, they found that the defendant should be punished by the infliction of the death penalty. On the 14th day of April, 1908, the district court sentenced him to death, pursuant to the verdict. After the death sentence was pronounced upon the defendant, on April 14th, 1908, he appealed from such judgment to this court on the 23d day of October, 1908.

Defendant assigns four errors. These assignments of error relate to the insufficiency of the plea and errors of law in giving instructions to the jury in reference to the punishment to be inflicted.

In reference to the plea, the appellant's principal contention is that the same was a nullity for the reason that he was not required to designate therein whether he plead guilty of murder in the first degree or murder in the second degree, as provided by § 8807, Rev. Codes 1905. The appellant contends that the same rule should be applied in reference to the sufficiency of the plea in this case as is applied to the sufficiency of verdicts in similar terms in cases of crimes divided into degrees, or crimes that include offenses of a lower degree.

If the statute in reference to pleas and the statute in reference to verdicts in such cases were the same, the same rule would undoubtedly be applicable. In order to determine whether the same rule is necessarily applicable in this state, we will briefly consider the statutes applicable to verdicts. The appellant cites many cases holding that verdicts of "guilty" or verdicts of "guilty as charged" are insufficient, and it is his contention that the authorities holding such verdicts insufficient are in great majority.

We do not pass upon this question as applied to verdicts, as the same is not before us. We are called upon to give effect only to § 8807, as there is no other section of the Code bearing expressly upon plea of guilty in homicide cases. In cases of verdicts, there are other sections applicable, and they are the following: Section 8803, Rev. Codes 1905, provides that "the jury before whom any person prosecuted for murder is tried shall, if they find such person guilty thereof, determine by their verdict whether it is of murder in the first degree or of murder in the second degree."

Section 8804 provides that the jury in trials for murder shall deter-

mine the punishment to be inflicted, if the accused is found guilty, and in case of guilt of murder in the first degree, the jury must designate in the verdict whether the defendant shall be punished by death or by imprisonment in the penitentiary for life. If found guilty of murder in the second degree, the verdict must determine what the imprisonment shall be,—between not less than ten years in the penitentiary and not more than thirty years.

Section 8806 provides that in trials for murder the jury may, according to the facts and circumstances disclosed by the evidence, find the accused guilty of manslaughter. And when found guilty of manslaughter, the jury must designate whether the offense is manslaughter in the first or second degree, and shall determine the term of imprisonment within the limits prescribed by law.

Section 10051 provides that when the crime is distinguished into degrees, the jury must determine the degree of the crime if they find a verdict of guilty, and as to homicide cases the jury must find the degree of the homicide.

Section 10053 provides that the jury may find the defendant guilty of any offense the commission of which is necessarily included in that with which he is charged in the information or indictment, or of any attempt to commit the offense.

If these sections alone were to be considered, the decisions based on verdicts rendered in homicide cases would be applicable, to some extent, to the case under consideration, although the language is not identical with that of § 8807, supra, nor is the meaning of words synonymous. There are other sections, however, which make it apparent that the same construction is not applicable to pleas as to verdicts, if any force is to be given to the sections now referred to.

Section 10026 provides that the trial judge must charge the jury, before it retires to consider the verdict, upon all matters of law which may be deemed necessary to be submitted to the jury. In prosecutions for murder, this section devolves upon the trial court the duty of stating the law applicable to crimes divided into degrees, and with reference to offenses included within the offense charged in the information or indictment. It becomes necessary, under this section, for the judge to charge in reference to the elements of the crime in general, and each degree into which the crime charged may be divided, and the

punishment for each of such degrees in homicide cases. Further than this, § 10043 provides that a verdict may be either oral or in writing, unless the court requires that it be rendered in writing. If rendered in writing under instructions from the court, the jury must be provided with blank verdicts of suitable form for any verdict the jury may return, and such blank verdicts shall be taken by the jury when it retires. Compliance with this section renders it necessary for the jury to expressly designate the degree of the offense of which they find the defendant guilty.

Furthermore, § 10044 provides: "A general verdict upon a plea of not guilty is either 'guilty' or 'not guilty,' which imports a conviction or acquittal of the offense charged in the information or indictment," etc. Reading these two sections last mentioned, together, it is apparent that if a verdict of "guilty" is rendered by the jury in such a case, it is equivalent to an express statement that the jury find the accused guilty of the highest degree of the crime charged in the information. Taking the charge of the court to the jury and the blank forms of verdicts submitted to the jury, and considering them in connection with the verdict of guilty in such a case, there is no room for speculation as to the crime or grade of the offense of which the defendant is found guilty. By this construction, every section of the Code pertaining to verdicts is given effect to, and no one of them is rendered inoperative or meaningless.

In People v. Rugg, 98 N. Y. 537, 5 Am. Crim. Rep. 247, the court considered the effect of a verdict of guilty, found under statutes like our own. Section 10 of the Penal Code of New York is the same as § 10051, supra, and § 436 of the Code of Criminal Procedure is the same as § 10043 of our Code, and § 437 of the New York Code is the same as § 10044 of our Code. In that case the jury found the defendant guilty under an indictment containing four counts, each of which charged murder in the first degree. The court also found that there was no error in the charge of the court, in which it was stated that the indictment charged murder in the first degree and under it the jury could find the defendant guilty of any degree of murder or manslaughter which make up the general designation of the crime of homicide. The jury was further instructed that if they found the defendant guilty of any other crime than murder in the first degree, they must specify what that crime was. In determining the sufficiency of the ver-

dict as a verdict of murder in the first degree under such circumstances, the court said: "Taking these provisions together, it is apparent that § 10 of the Penal Code must be construed with the qualifications and restrictions contained in §§ 436 and 437, supra, of the Code of Criminal Procedure; and where, as in this case, the indictment charges the degree of the crime, and the verdict is a general one 'guilty,' it is not essential that such degree should be specified in the verdict. Any other interpretation would render the provisions contained in the last two provisions cited inoperative and of no avail. The object and intention of § 10 of the Penal Code evidently was to guard and protect the rights of the defendant, so that the court, in inflicting the punishment, might be advised of the exact nature of the crime of which he was convicted. That object is fully accomplished where the indictment specifies the degree of the offense charged, and the verdict is a general one of 'guilty.' The finding of the jury of a general verdict of 'guilty' was, under the circumstances, equivalent to, and in fact a verdict of, guilty of murder in the first degree, in view of the fact, especially, of the instruction of the court that if they found the defendant guilty of any other degree, they should so state in their verdict."

This construction of these provisions is, to us, conclusive, that a different question is before us than the consideration of a verdict of guilty under the provisions of the Code of Criminal Procedure.

In this case there is nothing from which the intention of the accused can be gathered, except the plea and the information. In cases of verdicts, the court has before it the charge to the jury, the penalty found by the verdict, and other matters showing, to a certainty, what was intended by the jury. We therefore conclude that the same rule is not necessarily applicable to verdict as to pleas.

As stated before, we do not intend to now determine what would be the legal effect of a verdict by a jury of guilty as charged in the information under similar circumstances, as the question is not before us. We will now proceed to determine what was the legal effect of the plea of "guilty as charged in the information," under the undisputed fact that the information charged murder in the first degree, by proper averments and also designated by name that degree of murder.

Section 8807, Rev. Codes, 1905, is as follows: "Whenever any person prosecuted for murder or manslaughter pleads guilty, he shall,

in his plea, designate whether he is guilty of murder in the first degree or in the second degree, or of manslaughter in the first degree or in the second degree; and the court shall, if said plea is accepted, determine the punishment to be inflicted therefor within the limits prescribed by law, and enter judgment against such person in accordance with such determination. But the court may, in its discretion, examine witnesses to aid in the determination of the punishment to be inflicted, or submit the same to a jury to determine the punishment, or, at its discretion, may refuse to receive a plea of guilty and submit the whole case to a jury."

This section first appeared in our Code in the Revision of 1895. Nothing similar to this section has been found in any other state, in respect to pleas in criminal cases. The object of the statute undoubtedly was to make it certain what degree of murder or manslaughter the defendant was pleading guilty of, in view of the fact that the death penalty might be inflicted. The terms of the statute are positive that the accused, whenever he pleads guilty, shall designate what degree he pleads guilty of. Thee word "designate" means to point out or specify. The language used seems to negative the theory that it was intended to be left to deduction, or that the terms of the statute are complied with if words are used that may apply to either degree of murder. Murder is divided into two degrees, by the statute, according to the facts and circumstances attending the killing, depending upon the presence or absence of deliberation and premeditation. These degrees are not distinct crimes under the statute, but are simply degrees of murder, dependent upon the facts attending the killing. There are no degrees of murder of the first degree. The elements of murder in the second degree are necessarily included in the charge of murder in the first degree.

The information in this case charges murder in the first degree, perpetrated by shooting with an unlawful, wilful, and premeditated and deliberate intent to kill. It does not charge murder perpetrated by poison or lying in wait, or by torture, or murder while committing or attempting to commit any of the felonies specified in § 8796., Rev. Codes 1905. Hence what is here decided is solely in reference to the plea made in this case to the crime charged in this information by express averments. These allegations of the information include a

charge of murder in the second degree as well as a charge of murder in
the first degree.   If the killing was wilful and unlawful, but done
without deliberation or premeditation, the offense would be murder in
the second degree.   In view of these facts, a plea of guilty as charged in
the information was uncertain.   What was the intent of the defendant
or what his understanding of the crime charged was, we do not know
from the record, and the statute precludes the right of the trial court to
speculate or make inferences in respect to such intent or understand-
ing.   Said § 8807 was passed to make certainty and definiteness be-
yond question in this respect.   Prior to the enactment of that section,
the plea in this case would have been sufficient and legal under the
statute in force at that time.   The statute then in force was as fol-
lows:   "Every plea must be oral, and must be entered upon the
minutes of the court in substantially the following form:   (1)   If
the defendant pleads guilty: 'The defendant pleads that he is guilty
of the offense charged in this information (or indictment); (2) if he
pleads not guilty:   'The defendant pleads that he is not guilty of the
offense charged in this information (or indictment).'"   Sec. 9910,
Rev. Codes 1905.

The enactment of said § 8807, supra, was an implied repeal of said
§ 9909, as to pleas in murder cases.   It would be nullifying the sec-
tion without warrant to hold that the plea is sufficient in the face of
§ 8807 declaring, in mandatory terms, that the plea must be specific.
We cannot ignore this statute passed under such circumstances.   It
would be ignoring the evident intent of the legislature that pleas must
be made in terms positive and specific, and not in general terms.

In 2 Bishop, Crim. Proc. 3d ed. § 595, it is said:   "The view sus-
tained by most of the authorities, and probably best in accord with the
reason of the thing, is that the legislature meant by this provision to
make sure of the jury's taking into their special consideration the dis-
tinguishing features of the degrees, and passing thereon.   Hence this
provision is in the full sense mandatory, and unless they find the de-
gree in a manner patent on the face of the verdict, without help from
the particular terms of the indictment, it is void.   No judgment can
be rendered thereon, but a second trial must be ordered."   Wharton
on Crim. Pl. & Pr. 8th ed. § 752, says:   "Where a statute requires
in the verdict a designation of a degree, or the specific assessment of
a punishment, a general verdict, without such designation or assess-
ment will be a nullity."

There are many decisions of other states on verdicts in homicide cases that have a close bearing upon the question here under consideration. Such decisions are not based upon statutes like our own in reference to verdicts above referred to, so far as we are able to gather from such decisions. In general, it may be said that these decisions deal with statutes requiring the verdict to specify what degree the accused is found guilty of whenever the crime for which he is on trial is divided into degrees. We will briefly refer to some of these cases as sustaining our construction of said § 8807.

In McLane v. Territory, 8 Ariz. 150, 71 Pac. 938, the defendant was convicted of larceny from the person by a verdict finding the defendant "guilty as charged in the indictment." In that territory the Code provides that whenever a jury convicts of a crime divided into degrees, it must find the degree of which he is guilty. In that case the court said: "We think, under the statute, the jury must by their verdict find the degree of the crime, where the crime is divided into degrees, and that, in the absence of such finding, the judgment of the court based thereon is not warranted. The law contemplates that the jury shall decide upon the degree, and that they shall unequivocally so express themselves in their verdict. It is not sufficient to say that the indictment specifies the degree of crime, and that by reference to it the court can ascertain the degree which the jury found; nor can it be assumed, in spite of the clear instructions of the court on that point, that the jury did pass upon the value of the property taken, or take into consideration the language of the indictment. The intent and purpose of the act is to require the jury to pass upon the degree of the crime and to register their action definitely in their verdict, and not leave it to be inferred, from reference to the indictment or any other proceeding in the case, what their action in that respect was, and in the absence of such finding in their verdict, the verdict is fatally defective."

That principle was adhered to by the same court in Buffehr v. Territory, 11 Ariz. 165, 89 Pac. 415.

In People v. O'Neil, 78 Cal. 388, 20 Pac. 705, the jury found a verdict as follows: "We—find the defendant—guilty as charged, the penalty to be imprisonment for life." The information charged murder, and the statute of the state provides that when a crime is dis-
20 N. D.—19.

tinguished into degrees, the jury must find the degree, if they convict. The court said: "It has been uniformly held that failure to specify the degree of murder under that section vitiates the verdict."

In State v. May, 62 W. Va. 129, 57 S. E. 366, the defendant was indicted for murder in the first degree, and the jury found her "guilty as charged in the within indictment." The court said: "In this state, where homicide is proven, the presumption is that it is murder in the second degree. . . . . This being so, the statute makes it clear that the prisoner was entitled to have the jury say by their verdict whether, if guilty, he was guilty in that degree of murder which authorized the court to pronounce judgment of death upon him. . . . Although the fatal defect of the verdict in this case thus plainly appears, and the point was saved by the motion in arrest of judgment, it has not been noticed or argued in this court. In so important a case, involving the life of the prisoner, the court does not feel warranted in shutting its eyes to so fatal a defect in the verdict."

In Waddle v. State, 112 Tenn. 556, 82 S. W. 827, the defendant was charged with and convicted of murder. The verdict was "guilty, as charged in the indictment, with mitigating circumstances." Under the statutes of Tennessee it becomes the province of the jury to ascertain in their verdict whether they find the defendant guilty of murder in the first or second degree. In that case it was argued by the appellant that the words, "with mitigating circumstances," indicated that the prisoner was found guilty of murder in the first degree. The court said: "But in the face of the positive mandates of the statute, there is no room for intendment or legal implication, for it imperatively requires that the jury shall ascertain in their verdict whether it is murder in the first or second degree."

In State v. Pettys, 61 Kan. 860, 60 Pac. 735, the defendant was charged with assault and shooting with a deadly weapon with intent to kill. The jury found the defendant "guilty, as charged in the information, of assault with intent to kill." The court said: "Included in the offense charged are others of a lower degree, and, as the Criminal Code requires the jury to specify in their verdict the degree of the offense of which they find the defendant guilty, it must be held that the verdict in question is fatally defective."

In State v. O'Shea, 59 Kan. 593, 53 Pac. 876, the defendant was

charged with an assault with intent to kill. The jury found him guilty of an assault with a deadly weapon with intent to kill, as charged and set forth in the information. The court said: "The requirement of § 239 of the Criminal Code, that the jury shall specify in their verdict of what degree of the offense they find the defendant guilty, has caused very nice and embarrassing questions to arise in a number of cases, but it may now be deemed the law of this state, well settled by a line of decisions, that the degree of offense of which the conviction is had must be determined from the verdict itself, and that the addition of the words, 'as charged and set forth in the information,' is insufficient to show that the jury intended to find the defendant guilty of every element of the principal crime charged in the information."

In Allen v. State, 85 Wis. 22, 54 N. W. 999, the defendant was charged with murder, and under that charge might have been found guilty of murder in either of the first, second or third degree. The jury found him guilty as charged in the information. The court said: "A general verdict of guilty upon such an information does not authorize the court to pronounce judgment, because the degree of the crime is not determined. These propositions must be considered as settled in this court."

In Hembree v. State, — Ark. —, 58 S. W. 350, the defendant was indicted for murder in the first degree. The jury found him "guilty, as charged in the indictment." Under the statutes of Arkansas, the jury must find, by their verdict, in case of guilty, whether the defendant is guilty of murder in the first or second degree. The court said: "Following this statute, it has been several times decided by this court that a verdict upon an indictment for murder, which does not find the degree of murder, is so defective that no judgment can be entered upon it." In People v. Campbell, 40 Cal. 136, the defendant was indicted for murder. The jury found him "guilty of the crime charged in the indictment." The statutes of California provide that juries in murder cases must find whether the guilt is of murder in the first or second degree. In that case the court said: "This injunction of the statute is not limited to any particular class of prosecutions for murder. On the contrary, it is made obligatory on all juries 'before whom any person indicted for murder shall be tried.' It establishes a rule to which there is to be no exception, and the courts have no authority to

create an exception when the statute makes none. We have no right to disregard a positive requirement of the statute, as it is not our province to make laws, but to expound them. . . . The word 'designate,' as here employed, does not imply that it will be sufficient for the jury to intimate or give some vague hint as to the degree of murder of which the defendant is found guilty; but it is equivalent to the words 'express' or 'declare,' and it was evidently intended that the jury should expressly state the degree of murder in the verdict, so that nothing should be left to implication on that point. If it be sufficient for the verdict to 'designate' the degree of the crime only by reference to the indictment, it would be equally good in such a case to simply find the defendant 'guilty,' without any express reference to the indictment; for a verdict of 'guilty,' without other words, would, in such case, be held to mean that he was guilty as charged in the indictment."

The fact that the information in this case specifies the degree of the murder to be murder in the first degree has no controlling effect. It was not essential to so characterize or specify the degree in the information. It is the averments of the information that control as to degree, and not the name given to the crime by the pleader or by the grand jury. The fact that it is named in the information, however, does not subject it to attack on that ground, but it is an irregularity only, and is considered surplusage. People v. Vance, 21 Cal. 400; People v. King, 27 Cal. 507, 87 Am. Dec. 95; People v. Nichol, 34 Cal. 211; Wharton, Homicide, 3d ed. § 557, and cases cited; Camp v. State, 25 Ga. 689; 10 Enc. Pl. & Pr. p. 151, and cases cited.

It is the fact that the information includes within its allegations all the necessary allegations for charging murder in the second degree that renders the plea uncertain, and that fact is not rendered less uncertain, as a matter of law, by reason of the fact that the offense is named as murder in the first degree. The following authorities are also in point: State v. Cleveland, 58 Me. 564; State v. Moran, 7 Iowa, 236; State v. Montgomery, 98 Mo. 339, 11 S. W. 1012; State v. Treadwell, 54 Kan. 513, 38 Pac. 813; State v. Reddick, 7 Kan. 143; State v. Jackson, 90 Mo. 156, 2 S. W. 128; Kirby v. State, 7 Yerg. 259.

The attorney general argues with force and plausibility that the information in this case became incorporated in the plea, and that the plea and the information must be construed together. What we have

said disposes of that contention, however. If so construed together, the plea would not be rendered certain as to the defendant's understanding as to the degree that he was pleading guilty of, nor would it be a less palpable disregard of a plain statutory provision passed to obviate the uncertainty that followed a literal compliance with the statute as it existed before the enactment of § 8807, supra.

Errors in giving instructions to the jury are also assigned. In view of the fact that the conviction must be set aside, we will briefly indicate our conclusion as to the propriety of such instructions, as further proceedings must be taken in the case.

The defendant was not a witness at the proceedings under which the question of punishment was submitted to the jury. He was present, necessarily, in court, however. The court stated to the jury what the punishment must be under the charge of murder in the first degree; that is, that it must be either the death penalty or imprisonment in the penitentiary for life.

The court also instructed the jury as to the credibility of witnesses, and gave the usual caution in regard to considering the testimony of witnesses, and the manner of determining as to their credibility, and stated further: "And in this connection you may consider the demeanor of the defendant in this case while he has been in the court room before you, in open court, as an element in the proof, should you see fit to consider the same." From this instruction as to the demeanor of the defendant, the jury were told that such demeanor could be considered by them an element of the crime. Unexplained, this instruction must have been taken to mean that the demeanor or conduct of the defendant in the court room might be taken as evidence, or as a test to determine whether the death penalty or life imprisonment should be imposed. We do not think it was proper under such circumstances. His demeanor might appear to indicate guilt or atrocity of character, whereas the reverse might be the truth.

The court also gave this instruction: "The question of the determination by you of which penalty shall be inflicted as a punishment for this crime is a question that you have to determine under all the evidence, and your verdict must be for one or the other of these penalties. Our statute under which you are acting contemplates that you act

as advisory board to the court, and this is the only crime known to the law in which a jury acts in such capacity. But your verdict is legally binding upon the court, whichever it may be, except that, should you return a verdict of the death penalty, the court, in its discretion, should it thereafter see fit to do so, might change the punishment to imprisonment for life; but the court could, under no circumstances, increase the punishment to death penalty after a verdict by you of life imprisonment."

The objection principally urged against this instruction is that it does not leave the question of punishment to the jury unequivocally. The jury was told that under certain circumstances the verdict could be changed by the court in its discretion. The statute provides absolutely that the jury is "to determine the punishment to be inflicted when that question is submitted to them in homicide cases." In this case we need not determine whether the verdict is advisory or binding upon the court. In other words, we need not determine whether § 10056, Rev. Codes 1905, applies in cases of verdicts as to punishment only under pleas of guilty. We are satisfied, however, that the question of punishment should be unconditionally submitted to the jury without any intimation that the whole responsibility as to punishment does not rest with the jury. The jury should not be told that the verdict might be changed by the court in case it deemed necessary to do so in the discretion of the court. The statement of the court was an indirect invasion of the province of the jury as to the determination of the punishment, and the court should have said nothing that interfered in the least with the discretion and judgment reposed in the jury as to that matter.

The following authorities tend to support the conclusion reached by us as to these instructions: People v. Harris, 77 Mich. 568, 43 N. W. 1060; McBean v. State, 83 Wis. 206, 53 N. W. 497; Territory v. Griego, 8 N. M. 133, 42 Pac. 81; Garner v. State, 28 Fla. 113, 29 Am. St. Rep. 232, 9 So. 835; People v. Ross, 134 Cal. 256, 66 Pac. 230; Cohen v. State, 116 Ga. 573, 42 S. E. 781; People v. Murback, 64 Cal. 369, 30 Pac. 608.

The judgment is reversed, and the cause remanded for further proceedings. All concur.