No. 37,611

In the Matter of the Application of Birdie Christensen for Writ of Habeas Corpus (BIRDIE CHRISTENSEN, *Petitioner,* v. THE STATE OF KANSAS, *Respondent*).

(203 P. 2d 258)

Opinion filed March 5, 1949.

*C. Vincent Jones* and *Wayne W. Ryan,* both of Clay Center, argued the cause and were on the briefs for the petitioner.

*Edward Rooney,* of Topeka, argued the cause and *John Berglund, Jr.,* of Clay Center, was with him on the briefs for the respondent.

The opinion of the court was delivered by

SMITH, J.: This is an original action in habeas corpus. The respondent filed an answer to the petition and the cause was orally argued and finally submitted on the question of whether a writ should issue and petitioner be ordered released from custody.

The petition grows out of the prosecution of petitioner for murder in the first degree. The prosecution has here been dealt with twice before. (See *State v. Christensen,* 165 Kan. 585, 195 P. 2d 592; also *State v. Christensen,* 166 Kan. 152, 199 P. 2d 475.)

The undisputed facts as they appear from the petition and answer and the files of this court are substantially as follows:

Petitioner was arrested, taken before a magistrate and bound over for trial on an information charging her with the murder of her husband. She pleaded not guilty and was duly tried in March, 1948, and the jury returned a verdict as follows:

"We, the jury impaneled and sworn in the above entitled case, do upon our oaths find the defendant guilty of murder in the first degree."

The verdict was duly received and the jury discharged. In due time a motion for a new trial was filed and overruled, the defendant sentenced to the State Industrial Farm for Women at Lansing until discharged in due course of law. She filed her motion asking the trial court to fix bond for her release pending her appeal. This motion was denied and execution of the sentence was stayed. She then filed a written application in this court asking us to fix her bond and order her release until the final disposition of her case, pursuant to G. S. 1947 Supp. 62-1724. In the motion she referred to a stipulation between her own counsel and counsel for the state, with the consent of the trial court, that the question of penalty would not be submitted to the jury and that in the event of her conviction of murder in the first degree the penalty of death would not be inflicted and no penalty greater than life imprisonment would be included in the sentence and that the state announced to the jury it was not asking the penalty of death. On the hearing by us of that motion counsel made no contention but that the statements contained in the motion were true. We stated in our opinion the gist of defendant's position to be that on account of the above stipulation and the various steps that had already been detailed, notwithstanding that she had been charged with and convicted of murder in the first degree under section 9 of the bill of rights, she was entitled to bail as a matter of right. We reviewed the pertinent constitutional provisions, statutes and decisions, held that she was not entitled to bail, and denied her motion. (See *State v. Christensen,* 165 Kan. 585, 195 P. 2d 592.)

In due time the appeal was submitted on its merits. We first noted the question of the stipulation, to which reference has already been made, and noted that the question of error based on that stipulation had not been raised by either party. We pointed out that the question confronted us on the record and could not be ignored. Following that stipulation the trial court did not instruct the jury as to its duty to fix the punishment or in any manner as to the punishment. We pointed out and quoted G. S. 1947 Supp. 21-403, as follows:

"Every person convicted of murder in the first degree shall be punished by death, or confinement and hard labor in the penitentiary of the state of Kansas for life. If there is a jury trial the jury shall determine which punishment shall be inflicted. If there is a plea of guilty the court shall determine which punishment shall be inflicted, . . ."

We said:

"It is the jury and the jury alone which can determine the penalty, regardless of the attitude of counsel or court. That being the law, it becomes the clear duty of the trial court to so advise the jury and to submit for its determination the question of penalty in the event a verdict of murder in the first degree is returned." (166 Kan. 157.)

Following the foregoing we briefly considered the argument of counsel for the defendant on the grounds for a new trial urged by her and held them to be without merit. Our conclusion was that the motion for a new trial should have been allowed because of error in failing to submit to the jury the question of punishment if it should find the defendant guilty of murder in the first degree. Such was our order.

In due time this petition was filed. In it petitioner set out briefly the steps in her conviction that she was restrained and her restraint was illegal because she had been put in jeopardy by the former trial, and to try her again would be to put her twice in jeopardy for the same offense, in violation of section 10 of the bill of rights, and in violation of the fourteenth amendment to the constitution of the United States, and that she had a right to be discharged because of the verdict and the discharge of the jury because she was not legally held, no commitment having been issued. The respondent answered that he was holding petitioner because of the proceedings in the case of *State v. Christensen,* 165 Kan. 585, 195 P. 2d 592 and *State v. Christensen,* 166 Kan. 152, 199 P. 2d 475. The respondent asked us to take notice of these proceedings. Attached to this answer was a statement by counsel setting out various steps in the entire proceedings. This statement contained the following paragraph:

"That immediately after verdict the court directed said respondent to take custody of the defendant. Immediately, respondent then placed defendant in the Clay County jail, on the 12th day of March, 1948. That no commitment papers, material herein, have ever been delivered or filed with respondent."

Based on the above pleadings, petitioner moved to strike the reference to the two reported opinions and also a motion to quash the return and to discharge her.

At the outset, petitioner points out the statement of the respondent that no commitment papers had ever been delivered to him and argues therefrom that such is an admission that the restraint is unlawful. Perhaps it is slightly irregular that petitioner is being held in jail by the respondent without any commitment. It does not follow, however, that she is now entitled to be released. A journal entry of judgment has been issued by the trial court. When the mandate in our first opinion reached the trial court a certified copy of the sentences should have been delivered to the sheriff by the clerk of the district court. (See G. S. 1935, 62-1518.) It was the duty of the prosecuting attorney to cause the clerk to issue this certified copy of the sentence. (See *State, ex rel., v. Baird,* 117 Kan. 549, 231 Pac. 1021.) The sheriff should have forthwith delivered petitioner to the matron of the Industrial Farm for Women at Lansing. (See, also, G. S. 1935, 62-1821.) Such was the proper place for her confinement once we had held her not to be entitled to bail pending her appeal. Had such been done, then when the judgment in the case was reversed and a new trial ordered, we would have ordered her to be returned to Clay county for a new trial. (See G. S. 1935, 62-1822.) The fact that she was held in the Clay county jail pending the appeal seems to have been by grace of the officials charged with the duty of putting into effect the judgment of the trial court and delivering her at Lansing. At any rate, she is now where she should be, awaiting her new trial.

Petitioner concedes the rule to be that where a defendant has been convicted and has appealed and on account of some error urged by her has been awarded a new trial she has thereby waived her right to plead former jeopardy. She argued, however, that such rule does not apply here because every ground urged by petitioner upon appeal was denied. She obtained no benefit by anything urged by her as prejudicial to her rights. She argues there was nothing in the appeal itself from which a waiver or estoppel could arise. She argues that the reversal was on account of the failure of the trial court to instruct the jury; that this failure was not prejudicial to her—hence she could not raise the question of whether such instruction should have been given.

Her argument is that when a defendant obtained a reversal on account of an error of the trial court, to which she herself calls the attention of the appellate court, then the trial in which the error occurred was no trial at all, as contemplated by the constitution,

so it cannot be made the basis of a plea of double jeopardy, but that when the reversal is on account of some error not raised by her, she only waives double jeopardy as to the points actually raised. We early treated the question. (See *State v. McCord*, 8 Kan. 232.) In that case McCord was charged with murder in the first degree. At his first trial he was convicted of manslaughter and sentenced for not less than three years. On his motion the trial court granted him a new trial. On this trial he was convicted of murder in the second degree, the penalty for which was imprisonment for ten years. On appeal to this court he argued that the verdict of guilty of manslaughter in the third degree in his first trial was in effect an acquittal of all the higher degrees of the offense than the one of which he was found guilty and that when he moved for a new trial he only waived the constitutional guaranty that he should not twice be put in jeopardy for the same offense so far as it was necessary to obtain a new trial and that it was not necessary and he did not waive it as to the degrees of which he was inferentially acquitted. In dealing with this argument we pointed out that courts at the common law had no jurisdiction to grant new trials. In some of the jurisdictions courts had assumed the power in the interest of justice. In some it was a matter of legislative grant. · It has never been held to be a constitutional grant. We then quoted section 290 of the code of criminal procedure, which is identical with our present G. S. 1935, 62-1601. It provided, as follows:

"A new trial is a re-examination of the issue in the same court. [G. S. 1868, ch. 82, § 273; Oct. 31; R. S. 1923, § 62-1601.]"

We also quoted section 274 of the code of criminal procedure, which with the exception of some immaterial punctuation is identical with G. S. 1935, 62-1602, and provided, as follows:

"The granting of a new trial places the parties in the same position as if no trial had been had; the former verdict cannot be used or referred to either in the evidence or argument. [G. S. 1868, ch. 82, § 274; Oct. 31; R. S. 1923, § 62-1602.]"

We said further:

"The authorities all agree that the constitutional right may be waived by the party convicted, and that this waiver is commensurate with the necessities of the party, in order to obtain a new trial. Whatever may be the proper rule as to the extent of the waiver where there is no statute, it is plain that where the statute has fixed the necessity, it has also there placed the extent of the waiver. In this state the necessity is that the party should

waive the entire right so as to bring himself within the power of the court to grant him a new trial. His waiver goes no further than his necessities. He makes his motion with a full knowledge of the risks he takes, and of all the possible consequences. To obtain a new trial, he voluntarily waives a right that neither courts nor the legislature can take from him—a right that he surrenders for his own benefit, and the exact extent of which was plainly written, as the terms on which it could be done, when his motion was allowed." (p. 243.)

By analogy this opinion is authority that when one files a motion for a new trial he cannot limit, by failing to raise some objection, the extent to which he waives his constitutional immunity from being twice put in jeopardy for the same offense. The result in the above quoted case was somewhat harsh. However, the defendant as well as the petitioner here is obtaining the end she sought, that is, a retrial of all the issues in her case to another jury. In *State v. Christensen,* 165 Kan. 585, 195 P. 2d 592, we said:

"This is evident when it is remembered that if defendant should prevail in her pending appeal, and the case be remanded for a new trial, that trial will be on an information charging her with the offense of murder in the first degree under which the state may seek to have the death penalty inflicted. We think it may not be held that defendant is entitled to bail as a matter of constitutional right." (p. 591.)

In *State v. Hart,* 33 Kan. 218, 6 Pac. 288, we again discussed the pertinent statutes and said:

"Also, in this state, when a new trial is granted upon the motion of the defendant in a criminal case, the granting of the same places the party accused in the same position as if no trial had been had." (p. 221.)

In *State v. Terreso,* 56 Kan. 126, 42 Pac. 354, the defendant was convicted of wounding and endangering the life of a woman under circumstances which would have constituted manslaughter in the fourth degree if death had ensued therefrom. The motion for a new trial stated that the verdict found him guilty of an offense with which he was not charged. The trial court awarded him a new trial and at the trial he was convicted of assault with a deadly weapon with intent to kill. On appeal he raised the question of former jeopardy and argued that the first verdict was absolutely void. We said:

"The verdict, however, cannot be said to be a nullity . . . It is clear that the defendant derived some advantage and a legal benefit by the setting aside of the verdict, and as the new trial was granted at his request, he waived his right to plead former jeopardy, . . ." (p. 128.)

In *State v. Miller,* 35 Kan. 328, 10 Pac. 865, we followed *State v. McCord,* supra, by holding that where a defendant was charged with murder in the first degree and found guilty of manslaughter in the fourth degree and on his own motion was granted a new trial, on his second trial he could be convicted of a higher degree of the offense than manslaughter in the fourth degree, that is, his implied acquittal of the higher degrees at his first trial did not constitute jeopardy as to them when he was tried the second time. We again followed this rule in *State v. Morrison,* 67 Kan. 144, 72 Pac. 554.

Upon the precise point with which we are here concerned we have authorities from some other jurisdictions. In *Washington v. The State,* 125 Ala. 40, 28 So. 78, the statute made it the duty of the jury when a defendant was found guilty of murder to specify the degree, and if murder in the second degree, to fix the punishment at not less than ten years' confinement. The jury returned a verdict—

"We the jury find the defendant guilty of murder in the second degree."

No punishment was fixed by the jury. The trial court received the verdict and sentenced the defendant to ten years' imprisonment. The court held this was error and reversed the judgment. The court said:

"The defect in the verdict and the sentence of the court thereon do not entitle the defendant to his discharge as for having been once in jeopardy, as contended by defendant's counsel, but constitute simply reversible error." (p. 44.)

*Ex Parte Tanner,* 219 Ala. 7, 121 So. 423, was an inquiry addressed to the Supreme Court of Alabama by the Court of Appeals. One Tanner was convicted of carnal knowledge. The statute made it the duty of the jury if it found him guilty to fix his punishment. The jury failed to fix his punishment but the trial court reversed the verdict and proceeded to fix the punishment within the limits fixed by the statute. The court held this was error but not void and did not entitle Tanner to be released.

In *Wartner v. The State,* 102 Ind. 51, 1 N. E. 65, the defendant pleaded guilty to murder in the first degree. The trial court sentenced him to death. He appealed. The statutes of Indiana provided that trial to a jury might be waived except in capital cases. The court said:

"It is shown by the record that appellant's case is a capital case, and that the court, without the intervention of a jury, tried his case, found him guilty

as charged and adjudged that he suffer the penalty of death. This the court was not authorized to do, nor was the appellant authorized to consent thereto by any law of this State."

The case is interesting to us because the action of the court was treated as a trial error and he was awarded a new trial. Following this came *Lowery v. Howard*, 103 Ind. 440, 3 N. E. 124. That was a habeas corpus case. Lowery was charged with murder in the first degree, pleaded guilty, the plea was accepted and the trial court sentenced him to life imprisonment. He was taken to the Indiana State Prison and there confined. While there he petitioned for a writ of habeas corpus and charged that the action of the trial court in assessing his punishment without the intervention of a jury was void and he was entitled to his release. The court treated the petition as a collateral attack on a judgment and held the action of the trial court to be erroneous only and not void. The question of former jeopardy is not discussed in the opinion. It is clear, however, that the action of the trial court was analogous to that of the court here, that is, the duty of fixing the punishment was taken away from the jury, where the statute placed it. The Supreme Court of Indiana held that such was a trial error which entitled the defendant to a new trial. Cited by the court on this point was *Ex parte Tobias Watkins*, 3 Pet. 193, where the court said:

"An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the Court has general jurisdiction of the subject, although it should be erroneous." (p. 202.)

*In re Voight*, 130 Wash. 140, 226 Pac. 482, was a habeas corpus case. There the petitioner had pleaded guilty to murder in the first degree, the plea had been accepted and he had been sentenced to life imprisonment. The statutes of Washington provided, as follows:

"If, on the arraignment of any person, he shall plead guilty, if the offense charged be not murder, the court shall, in its discretion, hear testimony and determine the amount and kind of punishment to be inflicted; but if the defendant plead guilty to a charge of murder, a jury shall be empaneled to hear testimony, and determine the degree of murder and the punishment therefor." (p. 131.)

The petitioner contended that the judgment sentencing him was void and he was entitled to be released. The court treated the petition as a collateral attack and held that the judgment was only erroneous. The doctrine seems to have started in Washington with *In re Casey*, 27 Wash. 686, 68 Pac. 185, where the court held:

"The action of a justice of the peace in fining the accused, upon the failure of the jury to fix his punishment, when, under Bal. Code, § 6669, the jury was charged with the duty of assessing the punishment for any prisoner whom they might find guilty, although erroneous, was not void, where the justice had jurisdiction of the person and the subject-matter; and habeas corpus will not lie to secure the prisoner's release from commitment under such erroneous judgment, but the proper remedy is by appeal." (Syl.)

In *Alford v. State*, 30 Ala. App. 590, 10 So. 2d 370, the defendant was charged with murder in the first degree. The jury returned a verdict, as follows:

"We the jury find the defendant guilty of manslaughter in the first degree and recommend the mercy of the court." (p. 591.)

The jury was sent back to fix punishment and finally reported that it could not agree on the punishment. The trial court without the consent of the defendant ordered a mistrial. Defendant was again put on trial and again convicted of manslaughter in the first degree. He appealed and as one of his points argued that the attempted verdict at his first trial constituted jeopardy. The court of appeals said:

"(2) The trial court, here, acted, with reference to this first attempted verdict, in the only manner possible and as the decisions of our Supreme Court have dictated, i. e., refused to receive the verdict and directed the jury to return a proper one in compliance with his instructions . . . This the trial court did, is what he should have done, and all he could do. There is nothing to the point of jeopardy." (p. 592.)

The Supreme Court of Alabama denied certiorari. (See *Alford v. State*, supra.)

In *Price v. State*, 159 Md. 491, 151 Atl. 409, the defendant was charged with murder in the first degree. One of his defenses was insanity. The statute required that where one charged with crime alleged insanity as a defense, the jury should find by their verdict whether he was at the time of the alleged offense or still was an insane lunatic or otherwise. At the conclusion of the evidence six forms of verdict were handed the jury. The sixth form was as follows:

"Not guilty by reason of insanity, insane at the time of the commission of the offense and insane now." (p. 496.)

Counsel objected to this form and the trial court advised him the written forms would not be handed to the jury if he objected. The clerk then stated these forms were the ones that had been used ever

since he had been with the court, whereupon counsel withdrew his objection. The jury returned a verdict of guilty of murder in the first degree. No objection was taken to the form of the verdict and the point was not raised on the appeal. The court said:

"The express assent of prisoner's counsel to the form submtited cannot confer jurisdiction; and, consequently, if the court had no power to pro- nounce sentence on the verdict rendered, the court, *sua sponte,* must reverse the judgment." (p. 497.)

The court further said:

"When insanity is a defense in a criminal prosecution the judgment of the court is dependent upon a complete verdict of the jury." (p. 498.)

The court then referred to the statutes and said:

"By these express provisions, the jury must find on two separate issues of guilt and of insanity. The first is double in that it involves primarily the legal capacity to commit the crime and if so, secondarily, the question of the traverser's guilt. The second issue, apart from the question of the traverser's sanity *vel non* at the time of the crime charged and the prisoner's guilty participation in it, is simply whether or not the accused is sane at the time of the trial. The importance of a verdict in accordance with the statute is evident." (p. 498.)

At the end the court said:

"On the fatally incomplete verdict given in the appeal at the bar the trial court had no jurisdiction to proceed to a judgment, which, being a nullity, is no bar to a second trial, and the judgment entered should be reversed and the case should be remanded for a second trial under a writ of *venire facias de novo.*" (p. 503.)

The above is of rare persuasiveness here since there, as here, the jury had a twofold task. First, did the defendant commit the kill- ing? And, second, was he insane then or at the time of trial? Here the double question of first, did defendant kill her husband?—and, second, was the killing of such atrocious circumstances as to merit the death sentence? The opinion is sound authority for the con- clusion that the reception of an incomplete verdict such as we have here is only a trial error, nothing more, and the defendant may again be put on trial notwithstanding that she did not raise the matter of the incomplete verdict on her appeal.

A situation somewhat analogous to this arises in this state when the information upon which the defendant is tried is such as to charge several degrees of the same offense, each providing for a different penalty. In such cases it is the duty of the jury to specify the degree of the offense of which it finds the defendant guilty.

(See G. S. 1935, 62-1502.) In such cases where the jury failed to do its full duty under the statute and the trial court sentenced the defendant notwithstanding we held the verdict to be fatally defective, but to be a trial error only, and ordered a new trial. (See *State v. O'Shea,* 59 Kan. 593, 53 Pac. 876; and *State v. Heth,* 60 Kan. 560, 57 Pac. 108.)

In *State v. Chaney,* 117 W. Va. 605, 186 S. E. 607, Virginia Chaney had been charged with and convicted of murder in the first degree. She was sentenced to death. Under the statute the jury had authority in such cases to determine whether the accused if found guilty of murder in the first degree should be punished by death or confinement in the penitentiary for life. After dealing with some other errors urged by defendant, the court pointed out that the record was silent as to whether the jury was advised in the instructions of this authority. The court pointed out that in prosecutions for murder in the first degree the trial court had no discretion as to the punishment. The court further said:

"In view of the fact that the jury, and not the court, must determine whether an accused guilty of murder in the first degree shall be punished by death or confinement in the penitentiary, we are of opinion that the trial court erred in failing to advise the jury of their power in the premises." (p. 611.)

So far, the opinion is merely an additional authority to sustain our position in *State v. Christensen,* 166 Kan. 152, 199 P. 2d 475. It is of further interest here, however, because the court ordered a new trial for the defendant, just as we did here. This case was followed in *State v. Goins,* 120 W. Va. 605, 199 S. E. 873.

In *Calton v. Utah,* 130 U. S. 83, 9 S. Ct. 435, 32 L. Ed. 870, Calton had been prosecuted and convicted of murder in the first degree. He was given the death sentence. The statutes of the territory of Utah provided that:

"Every person guilty of a murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the penitentiary for life, at the discretion of the court, and every person guilty of murder in the second degree, shall be imprisoned at hard labor in the penitentiary for not less than five, nor more than fifteen years." (p. 86.)

The jury was not informed of their right under the statutes to recommend imprisonment for life in place of the punishment by death. The supreme court held that the trial court erred in not so instructing the jury. A new trial was ordered.

All to the same effect are *Vickers v. United States,* 1 Okla. Cr. R. 452, 98 Pac. 467; *Webb v. State,* 154 Ark. 67, 242 S. W. 380; also *Commonwealth v. Madaffer, Aplnt.,* 291 Pa. 270, 139 Atl. 875. With an analogous record in each of the foregoing a new trial was ordered.

In *Andres v. United States,* 333 U. S. 740, 68 S. Ct. 880, 92 L. Ed. 790, Andres was prosecuted for and convicted of murder in the first degree in the Territory of Hawaii. He was sentenced to die. The federal statutes provide that in all cases where the accused is found guilty of murder in the first degree, or rape, the jury may qualify its verdict by adding thereto without capital punishment; and whenever the jury shall return a verdict as aforesaid, the person convicted shall be sentenced to imprisonment for life. It appeared that the trial court misdirected the jury as to the unanimity required of the jury on the question of whether the words "without capital punishment" should be added to the verdict. The supreme court held that the jury must be unanimous on the question of whether the accused should suffer death and reversed the judgment holding the trial court had not properly instructed the jury. The case is of interest here because the court treated the matter as a trial error only and ordered a new trial.

The petitioner relies in the main on what was held in *Hartung v. The People,* 22 N. Y. 95, *Hartung v. The People,* 26 N. Y. 167; *Shepherd v. The People,* 25 N. Y. 406, 24 How. Pr. 388; and *Kuckler v. People,* 5 Park. Cr. Rep. 212 (N. Y.) 1860. These cases all deal with the same general situation in New York about 1860 and the distinction between what they hold and the situation with which we are dealing will not be pointed out.

Mrs. Hartung was convicted in 1858 of the murder of her husband. She was sentenced to be executed. Final judgment of death had been rendered in the supreme court January 9, 1860, but the day set for her execution had passed. In the meantime in 1860 the legislature had enacted a statute in relation to capital punishment. Through some legislative inadvertence the new statute repealed the former section, which provided that all persons who should be convicted of treason, murder or arson in the first degree should suffer death, so it should read that those convicted of such crimes should be punished as therein provided and then failed to enact any provision for inflicting the punishment of death in any case. The

court stated the question to be threefold—First, Could the accused be executed under the statute in force when the crime was committed and when the trial and conviction took place but which was repealed while she was awaiting execution? or second, whether she could be punished with death with the addition of a preliminary imprisonment, as provided by the statutes of 1860 and finally whether the court could give effect to its conclusions if they were favorable to the accused upon that writ of error, in which it was sitting in review of a judgment, which was not erroneous at the time it was pronounced. For reasons not necessary for us to review here the court answered the first question in the negative. As to the second query, the court held that since the punishment provided a different mode of punishment than the old statute it was applied to crimes not connected while the old statute was in effect retroactive and void on that account. As to the third query, the court pointed out that even though the judgment was valid at the time it was pronounced the accused would be helpless if that court did not take jurisdiction, and ordered a new trial for Mrs. Hartung.

The above is *Hartung v. The People*, 22 N. Y. 95. Standing alone it would seem at first glance to be against the position of petitioner here. Note, however, that the error of which complaint was made consisted in pronouncing judgment when there was no statute providing for a judgment. There was no trial error up to that point. There were later developments, however, which clarified the situation. Before Mrs. Hartung could be tried again the Court of Appeals considered and passed on *Shepherd v. The People*, 25 N. Y. 406.

Shepherd was charged in 1857 with arson in the first degree, charged to have been committed June 9, 1857. He was convicted in February, 1861. He moved in arrest of judgment and for a new trial on the ground—First, that he could not be sentenced under the new statute because so far as it was intended to apply to crimes of arson committed before the passage of the Act of 1860, it was void; and second, that he could not be sentenced under the new act because it was not intended to apply to offenses committed before its passage; and third, that there was no punishment whatever prescribed by the new act of 1860 for arson committed in 1857. The motions were all overruled and he was sentenced to life imprisonment.

The court first held that the sentence to life imprisonment was not legal because the provisions of the act charging the punishment for arson in the first degree to imprisonment for life must be deemed to have been intended to apply only to offenses committed after the act should take effect and if they should be held to have been intended to apply to offenses committed before the passage of the act, the act would be ex post facto and void.

The court then pointed out that upon reversing the judgment the court must either direct a new trial or discharge the accused. The court pointed out several cases where upon circumstances somewhat similar a new trial had been ordered. The court said:

"In all these cases, the new trial was awarded on the ground that there had been no lawful trial; . . . the indictment was sufficient; the court at which the defendant was tried was a court of competent jurisdiction; the jury were regularly impanneled, and rendered a lawful verdict; and the judgment, if reversed, must be reversed upon the record alone, and upon the ground alone that a wrong judgment was given upon a lawful and regular verdict . . ." (p. 418.)

The court held that since Shepherd had been legally and regularly tried on a good indictment and there having been no bill of exceptions he had been in jeopardy and could not be tried again.

As to the Hartung case and the Shepherd case on the one hand and the one we are considering on the other, the distinction clearly appears. In those cases there was no error in the record up to the point of pronouncing judgment and the illegality there was because of no statute upon which a judgment could be entered. In this case however the trial court erred in failing to submit the question of punishment to the jury. Such was an erroneous ruling, a misdirection of the jury, and required the granting of a new trial. (See G. S. 1935, 62-1603, *Four.*)

When Mrs. Hartung was again tried and convicted she raised the question of former jeopardy and the court followed the ruling in the Shepherd case and ordered the accused discharged. (See *Hartung v. The People*, 26 N. Y. 167.)

In *Kuckler v. The People*, 5 Park Cr. Rep. 212 (N. Y.) 1860, the defendant before the Act of 1860 was indicted for murder and after the act went into effect was convicted and sentenced pursuant to the act. The court said:

"The trial of the prisoner and his conviction were in all respects regular and legal, and no exceptions to them are brought before us. The writ of

error has brought up the record alone, and no question is made except upon the illegality of the judgment pronounced upon a proper conviction." (p. 213.)

The court said further:

"But in the case at bar the conclusion is forced upon my mind that there can be no new trial. The trial and conviction that have taken place were in all respects regular and legal. When the verdict was rendered the prisoner stood lawfully convicted of murder. (4 Black. Com., 362.) The legislature (to that purpose omnipotent, both in wisdom and folly) had repealed all statutes prescribing his sentence and punishment, under circumstances where the common law was not revived." (p. 215.)

In the final analysis these opinions really fortify our conclusion that what happened in the trial of Mrs. Christensen was a trial error, nothing more.

The writ is denied.

ARN, J., not participating.